IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FT. WORTH DIVISION

| | | |
|---|---|---|
| DISABILITY RIGHTS TEXAS, | § | |
| Plaintiff, | § | CIVIL ACTION NO. 14-CV-715 |
| v. | § | |
| | § | |
| MANSFIELD INDEPENDENT | § | |
| SCHOOL DISTRICT and | § | |
| Dr. JIM VASZAUSKAS, | § | |
| in his Official Capacity as | § | |
| Superintendent, | § | |
| | § | |
| Defendants. | § | |

**<u>APPENDIX IN SUPPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
AND MEMORANDUM OF LAW IN SUPPORT THEREOF</u>**

COLLEEN ELBE
State Bar No. 24050154
DISABILITY RIGHTS TEXAS
4747 S. Loop 289, Suite 120
Lubbock, Texas 79424
(806) 765-7794 (phone)
(806) 765-0496(fax)
celbe@disabilityrightstx.org

ELISE MITCHELL
State Bar No. 01478720
DISABILITY RIGHTS TEXAS
1420 West Mockingbird Lane, Ste. 450
Dallas, Texas 75247-4932
(214) 630-0916 (Phone)
(214) 630-3472 (Fax)
emitchell@disabilityrightstx.org

*Attorneys for Plaintiff*

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FT. WORTH DIVISION

DISABILITY RIGHTS TEXAS,      §
Plaintiff,                    §          CIVIL ACTION NO.14-cv-715
            v.                §
                              §
MANSFIELD INDEPENDENT         §
SCHOOL DISTRICT and           §
Dr. JIM VASZAUSKAS,           §
in his Official Capacity as   §
Superintendent,               §
                              §
Defendants.                   §

## PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**COMES NOW,** Plaintiff, Disability Rights Texas and files this, it's Original Complaint for Declaratory and Injunctive Relief against Defendants Mansfield Independent School District, and Dr. Jim Vaszauskas Superintendent, in his Official Capacity, and, accordingly, respectfully shows the following:

## I.      PRELIMINARY STATEMENT

1.      Plaintiff, Disability Rights Texas ("DRTx"), is the designated protection and advocacy system for the state of Texas.  Under Federal law, DRTx's mandate is to protect and advocate on behalf of individuals with mental or physical disabilities and to investigate incidents of abuse or neglect. *See* the Developmental Disabilities Assistance and Bill of Rights Act ("PADD Act"), 42 U.S.C. § 15041 *et seq.*, the Protection and Advocacy of Individual Rights Act ("PAIR Act"), 29 U.S.C. § 794e *et seq.*, and the Protection and Advocacy for Individuals with Mental Illness Act

("PAIMI Act"), 42 U.S.C. §§ 10801-10827. (These three laws are hereafter collectively referred to as the "P&A Acts.").

2.     In accordance with these federal mandates, DRTx has authority to access records, including the names and contact information of guardians for the purposes of investigating incidents of abuse or neglect. Consistent with DRTx's federal mandate, DRTx requested access to the names and contact information of the guardians of Mansfield Independent School District ("MISD") students in the SUCCESS Program at Annette Perry Elementary School ("APE") during the 2013-2014 school year, as well as those scheduled to be in the SUCCESS classroom for the 2014-2015 school year, in order to investigate serious allegations of abuse and neglect of these students. Defendants have refused to provide DRTx access to these documents alleging that they are confidential.

3.     By this action, DRTx seeks declaratory and injunctive relief from this Court requiring the Defendants to provide the requested information—the names, addresses, and telephone numbers of the guardians of students who were in the SUCCESS classroom at APE for the 2013-2014 school year and of the students assigned to the classroom for the 2014-2015 school year—so that DRTx may fulfill its statutory duties and investigate the alleged incidents of abuse and/or neglect.


## II.     JURISDICTION AND VENUE

4.     This court has jurisdiction under 28 U.S.C. § 1331 and § 1343(a)(3) since Plaintiff DRTx, brings this action under 42 U.S.C.  § 1983 for injunctive and declaratory relief to redress Defendants' violation of the PADD Act, 42 U.S.C. § 15041, *et seq*., the PAIR Act, 29 U.S.C. § 794e, *et seq*., and the PAIMI Act, 42 U.S.C. § 10801 *et seq*.

5.      This Court has authority to grant Plaintiff's claims for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, and Rules 57 and 65 of the Federal Rules of Civil Procedure.

6.      Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b) as all of the events and omissions included in this complaint occurred on MISD properties serving students from Tarrant, Ellis and Johnson Counties.

### III.   PARTIES

7.      Plaintiff, DRTx, is the federally mandated Protection and Advocacy System ("P&A") for the State of Texas, established pursuant to the PADD Act, 42 U.S.C. § 15001 *et seq*., the PAIR Act, 29 U.S.C. § 794e, and the PAIMI Act, 42 U.S.C. § 10801 *et seq*.  DRTx has been designated by the Governor of Texas as the P&A for the State of Texas.

8.      Defendant Mansfield Independent School District is a school district located in Tarrant County, Texas, and established pursuant to the Constitution of the State of Texas and the Texas Education Code.  MISD is responsible for the operation of all the public schools within its boundaries and for implementing the state's system of public education and ensuring student performance in accordance with the Texas Education Code and its implementing regulations.  Defendant MISD can be served with a copy of this complaint by serving the President of the Board of Trustees, Dr. Michael Evans, at 605 East Broad Street, Mansfield, Texas 76063.

9.      Defendant Dr. Jim Vaszauskas is sued in his official capacity as Superintendent of MISD and serves as the educational leader and the chief executive officer of the school district. He is responsible for "assuming administrative responsibility and leadership for the planning, organization, operation, supervision, and evaluation of the education programs, services, and facilities of the district" and is responsible for ensuring the implementation of district policies.  Tex.

4

Ed. Code § 11.201(d)(1); Tex. Ed. Code § 11.1512 (a). Defendant Vaszauskas can be served with a copy of this complaint at his place of business located at 605 East Broad Street, Mansfield, Texas 76063.

10.     "Defendants", as used herein, refers to all Defendants, its agents, employees, successors and all persons acting in concert with them or at their direction.


## IV.     STATEMENT OF FACTS

11.     Congress enacted the P&A Acts after extensive congressional investigations found that existing state systems for monitoring compliance with respect to the abuse and neglect of persons with disabilities residing in institutions vary widely and are frequently inadequate to protect these individuals. In order to ensure that the fox was no longer guarding the hen house, Congress mandated that each state have a 'protection and advocacy system' designed to have independent access to institutions and records in order to detect and prevent abuse and neglect. Because the State of Texas receives federal funds under the P&A Acts, it is required to designate a system that is designed to both protect and advocate the rights of individuals with disabilities, and that also investigates incidents of abuse and neglect of individuals with disabilities. *See, e.g*., 42 U.S.C. § 10801, *et seq.;* 42 U.S.C. § 15001, *et seq.*

12.     Annette Perry Elementary is a school within the MISD and is located at 1261 South Main Street in Mansfield, Texas.

13.     APE operates a program for students who require specialized social and behavioral instruction, which they call the SUCCESS class. The SUCCESS Program Guidelines and Overview indicate that most students in the SUCCESS program will have a disability of an Emotional Disturbance.

14.     The SUCCESS program utilizes what they call calm rooms or blue rooms ("calm/blue rooms") district wide.  The APE campus SUCCESS program has two of these rooms.  One measures 80 square feet and the other is 58.5 square feet.

15.     The calm/blue rooms are used when APE staff determine that a student's behavior warrants removing them from the SUCCESS classroom.  There is no limit to the amount of time a student is to be placed in the calm/blue room, and after placing a student in the room, APE teachers hold the door shut so the students cannot get out, thus turning the calm/blue room into seclusion.

16.     SUCCESS guidelines for classroom rules and consequences state that if a student is removed to the calm/blue room two or more times, the student must remain in "isolation for the remainder of the day."  Moreover, "[s]tudents' [sic] who engage in physical aggression will move to the isolation center for the remainder of the day or the following day depending on when the aggression occurs."

17.     On or about April 17, 2014 DRTx obtained information from multiple news sources and social media outlets alleging the overuse of these seclusion rooms at Annette Perry Elementary, particularly with students with disabilities.  The media sources raised concerns about the length of time students were being placed in seclusion, whether students were being "transported" to the calm/blue rooms safely and appropriately, and whether guardians of students in the SUCCESS class were appropriately notified about restraints used to transport students to the calm/blue rooms as required by the Texas Education Code.

18.     The media complaints, along with information obtained through public sources, and DRTx's work on restraint and seclusion issues provided DRTx with reasonable grounds to believe that students with disabilities in APE's SUCCESS program may be subject to abuse or neglect. Based on the complaint and DRTx's determination of probable cause to believe APE SUCCESS students

maybe being abused and/or neglected, DRTx began a full investigation into the use of the calm/blue rooms, as required of the organization under its federal P&A authority.

19.     In a letter dated June 5, 2014, DRTx wrote to Dr. Vaszauskas, as Superintendent of MISD, informing him that in light of the allegations of abuse and neglect of students in the SUCCESS class, DRTx would be conducting an investigation into the use of calm/blue rooms at APE.  In this letter, DRTx requested the names of all students assigned to the SUCCESS classroom for the 2013-2014 and upcoming 2014-2015 school years, as well as the names, addresses, and telephone numbers of the students' parents or guardians. DRTx outlined its P&A authority and why the information was necessary to conduct a full investigation.  DRTx noted in the letter that privacy protections in the Family Education Rights and Privacy Act ("FERPA") do not prevent MISD from being able to provide the requested information.

20.     In a letter dated June 10, 2014, Defendant MISD, responded to DRTx's request stating that MISD would not be releasing the requested information, because  MISD "believes the information requested is confidential and not subject to release" under FERPA and the Individuals with Disabilities Education Act ("IDEA").

21.     On June 16, 2014, DRTx responded to MISD's concerns and provided additional statutory authority and case law demonstrating that MISD's concerns under FERPA and IDEA raised were unfounded.

22.     On June 25, 2014, DRTx received a second letter from MISD stating that MISD would not release the requested information "absent parent consent, subpoena, or a court order."

23.     Defendants, in refusing to provide DRTx with the information necessary to conduct an investigation and authorized to be released to DRTx under its P&A authority, substantially impair, limit, and impede DRTx's ability to investigate serious allegations of abuse and neglect. As a result

of Defendants' refusal, DRTx has been prevented from carrying out an essential statutory responsibility, investigating incidents of abuse and neglect of individuals with disabilities, and therefore has suffered harm for which there is no remedy at law.

## V.    FIRST CAUSE OF ACTION:
## VIOLATION OF THE PADD, PAIR, AND PAIMI ACTS

24.     DRTx restates and incorporates each and every allegation contained in Paragraphs 1 through 24 as though fully set forth herein.

25.     42 U.S.C. § 1983, provides relief for persons who, under color of state law, have been deprived of any rights, privileges or immunities secured under the U.S. Constitution or Federal law.

26.     DRTx, as the P&A system for the state of Texas, has the authority to investigate incidences of abuse and neglect of individuals with developmental disabilities if DRTx receives a complaint or has probable cause to believe that such incidences may have occurred. 42 U.S.C. §15043(a)(2)(B); 42 U.S.C. §§ 10805(a)(4)(B)(iii).

27.     In order to carry out investigations into allegations of abuse and neglect, DRTx is granted broad authority to access all records of any individual with a disability as well as other records relevant to conducting an investigation within three (3) calendar days of a request. *See* 42 U.S.C. § 15043(a)(2)(I), (J); 42 U.S.C. § 10805(a)(1).

28.     Based on the media complaints and DRTx's determination of probable cause to believe APE SUCCESS students may be subject to abuse and/or neglect, DRTx began a full investigation into the use of the calm/blue rooms, by requesting the names and contact information of the parents or guardians of students in that particular SUCCESS classroom.

29.     Without the requested records, DRTx will be unable to complete a thorough investigation into the excessive seclusion of the students in APE's SUCCESS program.

30.     Defendants failed to make the information available to DRTx.  Defendants' action under color of law, and refusal to give DRTx access to the requested records, violates the right of Plaintiff to meaningful and timely access to records, in violation of the PADD, PAIR and PAIMI Acts, unless enjoined.

## VI.    INJUNCTIVE RELIEF

31.     Plaintiff DRTx requests that after notice and hearing, the Court enjoin Defendant from denying DRTx immediate access to the names and contact information of the parents or guardians of students in the APE SUCCESS classroom.

## VII.    DECLARATORY RELIEF

32.     Plaintiff DRTx requests that after notice and hearing, this Court enter a declaratory judgment that the Defendant's policies, regulations, and practices of denying DRTx access to the names and contact information of the parents or guardians of students in the APE SUCCESS classroom, violate the PADD, PAIR, and PAIMI Acts.  42 U.S.C. § 105043 *et seq.* and 42 U.S.C. § 10801 *et seq.*

## VIII.    REQUESTS FOR RELIEF

WHEREFORE, Plaintiff Disability Rights Texas, respectfully requests this Court grant the following relief:

A.  Enter a declaratory judgment that by denying DRTx access to the requested contact information of parents of the students in the SUCCESS program and therefore preventing DRTx from fully performing its statutory duty to investigate suspected incidents of abuse and neglect, the Defendants' actions violated the PADD Act, the PAIR Act, and the PAIMI Act;

B.  Enter preliminary and thereafter permanent injunctive relief under 28 U.S.C. § 2202, requiring Defendants to provide DRTx with the requested information—the names of students in the SUCCESS class at Annette Perry Elementary School for the 2013-2014 school year, as well as those students assigned to that classroom for the 2014-2015

school year, and the names, addresses, and telephone numbers of their parents or guardians;

C.  Retain jurisdiction over this action to ensure Defendants' compliance with the mandates of the DD Act, PAIR, and PAIMI;

D.  Award reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988(B);

E.  Order such other and further relief as the Court may deem equitable and just.


DATED: August 28, 2014


Respectfully submitted,

_____s/ Colleen Elbe_____
COLLEEN ELBE
State Bar No. 24050154
DISABILITY RIGHTS TEXAS
4747 S. Loop 289, Suite 120
Lubbock, Texas 79424
(806) 765-7794 (phone)
(806) 765-0496(fax)
celbe@disabilityrightstx.org

ELISE MITCHELL
State Bar No. 01478720
DISABILITY RIGHTS TEXAS
1420 West Mockingbird Lane, Ste. 450
Dallas, Texas 75247-4932
(214) 630-0916 (Phone)
(214) 630-3472 (Fax)
emitchell@disabilityrightstx.org

*Attorneys for Plaintiff*

<u>CERTIFICATE OF SERVICE</u>

I certify that on this 28th of August, 2014, a true and correct copy of *Plaintiff's Original*

*Complaint for Declaratory and Injunctive Relief* was sent via Facsimile and U.S. Certified Mail,

return receipt requested to:

> Mari M. McGowan
> Abernathy, Roeder, Boyd & Joplin, P.C.,
> 1700 Redbud Boulevard, Suite 300
> P.O. Box 1210
> McKinney, Texas 75070-1210
> (214) 544-4040 (Fax)
>
> Dr. Michael Evans
> President, MISD Board of Trustees
> 605 East Broad Street
> Mansfield, Texas 76063
>
> Dr. Jim Vaszauskas
> Superintendent
> 605 East Broad Street
> Mansfield, Texas 76063

*s/ Colleen Elbe*
COLLEEN ELBE

11

# Exhibit B

June 5, 2014

*Via CMRRR*

Mansfield Independent School District
Attn: Dr. Jim Vaszauskas
605 East Broad Street
Mansfield, TX 76063

      Re: SUCCESS Classroom at Annette Perry Elementary School

Dear Dr. Vaszauskas,

      Disability Rights Texas (DRTx) is writing to request the names of all students in the SUCCESS classroom at Annette Perry Elementary School during the 2013-2014 school year and those scheduled to start the 2014-2015 school year in the classroom as well as their parent or guardian's name, address, and telephone number.

      DRTx is entitled to this information as the federally mandated Protection and Advocacy System (P&A) for the State of Texas. A P&A is an agency established pursuant to the Developmental Disabilities Assistance and Bill of Rights Act. 42 U.S.C. § 15001 *et seq.* (PADD Act), the Protection and Advocacy for Individuals with Mental Illness (PAIMI) Act, 42 U.S.C. § 10801 *et seq.*, and the Protection and Advocacy of Individual Rights (PAIR) Program of the Rehabilitation Act, 29 U.S.C. § 794e. (Collectively referred to as the Acts). Congress, in enacting these Acts, mandated that each state receiving funds under these Acts establish a protection and advocacy (P&A) system to protect the rights and interests of persons with disabilities. DRTx (formerly Advocacy, Inc.) has been designated by the Governor of Texas as the P&A system for the State of Texas.

      The Acts provide detailed express authority for P&A systems to gain broad access to records, as well as to schools and students with developmental disabilities and mental illness, to investigate allegations of abuse and neglect when such incidents are reported to us or when we determine that there is probable cause to suspect that abuse or neglect has occurred. 42 U.S.C. §§ 10805(a)(4), 15043(a)(2); *Tex. Att'y Gen. Op. No. JC-0461 (2002); State of Conn. Office of Prot. & Advocacy for Persons with Disabilities v. Hartford Bd. of Educ.,* 464 F.3d 229, 238-43 (2d Cir.2006); see also *Advocacy, Incorporated v. Tarrant County Hospital District D/B/A John Peter Smith Hospital,* 2001 WL 1297688, at *3 (N.D. Tex. October 11, 2001). Courts have uniformly held that the broad statutory authority of the Acts requires that P&A systems be permitted to operate effectively, and with broad discretion and independence in gaining access to facilities and records.[1] *Mississippi Protection & Advocacy System v. Cotten,* 929 F.2d 1054, 1058-59 (5th Cir. 1991) ("The state cannot satisfy the

---

[1] *See also, Tarwater,* 97 F.3d 492 (11th Cir. 1996) (DD Act); *Michigan Protection Advocacy Serv., Inc. v. Miller*, 849 F. Supp. 120 (W.D. Mich. 1994) (DD Act); *Robbins v. Budke*, 739 F. Supp. 1479 (D.N.M. 1990) (PAIMI Act); *Maryland Disability Law Ctr., Inc. v. Mt. Washington Pediatric Hosp., Inc.*, 664 A.2d 16 (Md.App. 1995) (DD Act); *Cramer v. Chiles*, No.98-43-Misc.-T-26A (D. Fla. Sept. 1, 1998) (DD Act).

13

requirements of [the DD Act] by establishing a protection and advocacy system which has authority in theory, but then taking action which prevents the system from exercising that authority.").

DRTx has obtained information from multiple news sources and social media outlets alleging the over use of the calm/blue rooms at Annette Perry Elementary School, particularly with SUCCESS students and/or students with disabilities. Additionally, records obtained from the Texas Education Agency and Mansfield ISD, reveal a disproportionate amount of students with disabilities are subjected to restraint and other harsh disciplinary practices. Furthermore, data provided by Mansfield ISD indicates that out of the 825 district-wide uses of the blue/calm rooms in 2013-2014, over 200 of those occurred at Annette Perry Elementary School. This information gives DRTx probable cause to believe that all students in the SUCCESS classroom at Annette Perry Elementary School may be subject to abuse[2] and/or neglect.[3] DRTx plans on conducting an investigation into these concerns and reports. The case law and regulations implementing the P&A statutes clearly support DRTx's authority to gain access to: the identities of multiple individuals who may have been, or who may be in the future, subject to abuse and neglect; and to the identities of their guardians, for purposes of obtaining consent to access individual records.

In fact, several recent cases concluded that public schools were required to disclose "the names of all Academy students and the contact information for their parents and guardians." *State of Conn. Office of Prot. & Advocacy for Persons with Disabilities,* 464 F. 3d 229 at 246.[4] It is under these authorities that DRTx is requesting the names of all students in the SUCCESS classroom at Annette Perry Elementary School during the 2013-2014 school year and those scheduled to start the 2014-2015 school year in the classroom as well as their parent or guardian's name, address, and telephone number.

---

[2] The federal regulations implementing the PAIMI Act and the PADD Act define abuse as: "the use of excessive force when placing an individual with mental illness in bodily restrains; the use of bodily or chemical restraints which is not in compliance with Federal and State laws and regulations; verbal, nonverbal, mental and emotional harassment; and any other practice which is likely to cause immediate physical or psychological harm or result in long-term harm if such practices continue." *See* 42 C.F.R. § 51.2 (PAIMI Act); 45 C.F.R. § 1386.19(PADD Act).

[3] The federal regulations implementing the PAIMI Act and the PADD Act define neglect as the failure to "establish or carry out an appropriate individual program plan or treatment plan for a individual with mental illness, the failure to provide adequate nutrition, clothing, or health care to a individual with mental illness, or the failure to provide a safe environment for a individual with mental illness. . ." *See* 42 C.F.R. § 51.2 (PAIMI Act); 45 C.F.R. § 1386.19 (PADD Act).

[4] *See also See Disability Law Center of Alaska, Inc. v. Anchorage School Dist.,* 581 F.3d 936, 939, (9th Cir. 2009)(P&A was entitled to the name of every student in the Lake Otis special education class and their guardian contact information where there were complaints regarding classroom conditions and the treatment of students); *State of Conn. Office of Prot. & Advocacy for Persons with Disabilities,* 464 F.3d at 244-45 (finding that a P&A system was authorized to obtain the names of all students in a therapeutic educational program for students who require special education and the name and contact information for parents and legal guardians of the students); *Pa. Prot. & Advocacy, Inc. v. Royer-Greaves Sch. for Blind,* 1999 WL 179797, at *9-10 (E.D.Pa. Mar. 25, 1999) (finding that a P & A system was authorized to obtain a list of the names and addresses of the guardians of the students at a residential school for children with developmental disabilities and blindness where the P & A system had received complaints of "systemic neglect" at the school); *see also Iowa Prot. & Advocacy Servs., Inc. v. Gerard Treatment Programs, L.L.C.,* 152 F. Supp. 2d 1150, 1171-72 (N.D.Ia.2001) (suggesting that probable cause to believe that widespread abuse is occurring justifies generalized access to records).

Since DRTx is only requesting contact information FERPA's privacy provisions should not be a barrier.  However, in the event that you believe that FERPA's privacy provisions prevent the district from providing the requested information, you should note that the same courts that required the release of all student names and guardian contact information for students in special education also addressed whether the potential conflict between FERPA and IDEA, on one hand, and the DD Act and PAIMI on the other, and concluded that, "given the unequivocal statutory mandate afforded to protection and advocacy systems to access records in specific situations and the statutory responsibility of such organizations to keep such records confidential, FERPA and IDEA did not prevent educational institutions and agencies from providing such systems with records."  *See State of Conn. Office of Prot. & Advocacy for Persons with Disabilities v. Hartford Bd. of Educ,* 355 F. Supp. 2d 649, 663 (D.Conn. 2005); see also *Disability Law Center of Alaska, Inc.* 581 F.3d at 940; *Michigan Protection and Advocacy Service v. Miller,* 849 F. Supp. 1202, 1208 (W.D.Mich.1994).

The PADD Act specifies that records/contact information must be provided not later than three (3) business days after DRTx makes a written request. 42 U.S.C. § 15043(a)(2)(J). Therefore, I will anticipate your response within three (3) business days of receipt of this request. If you have any questions about this request, please contact me.  Thank you for your time and attention in this matter.

Sincerely,

Colleen Elbe
Attorney/Regional Manager

15

# Exhibit C



# ABERNATHY ROEDER & BOYD JOPLIN • P.C.

1700 Redbud Boulevard, Suite 300 • P.O. Box 1210 • McKinney, Texas 75070-1210
Metro 214.544.4000 • Fax 214.544.4040

## ATTORNEYS AT LAW

MARIANNA M. MCGOWAN

mmcgowan@abernathy-law.com
Direct Dial 214.544.4031

June 10, 2014

Ms. Colleen Elbe
Disability Rights Texas
4747 South Loop 289
Suite 120
Lubbock, Texas 79424

*VIA CERTIFIED MAIL and*
*VIA EMAIL* rguerra@disabilityrightstx.org

Re:   **Public Information Request to Mansfield Independent School District /**
      **SUCCESS Classroom at Annette Perry Elementary School**

Dear Ms. Elbe:

Our firm represents the Mansfield Independent School District ("Mansfield ISD" or "District"). This letter is written on behalf of the Mansfield ISD in response to your letter dated June 5, 2014, in which you requested the following information:

> "the names of all students in the SUCCESS classroom at Annette Perry Elementary School during the 2013-2014 school year and those scheduled to start the 2014-2015 school year in the classroom as well as their parent or guardian's name, address, and telephone number."

The Mansfield ISD believes the information requested is confidential and not subject to release pursuant to the Family Education Rights and Privacy Act ("FERPA") and the Individuals with Disabilities Education Act of 2004 ("IDEA"). Specifically, the information you requested directly identifies the special education status, and in many cases, particular disabilities, of the students whose identities and locating information you are seeking. However, in an abundance of caution, the Mansfield ISD is forwarding your request to both the Family Policy Compliance Office ("FPCO") and the Office of Special Education Programs ("OSEP") to confirm its interpretation of these provisions. You will be provided a copy of the correspondence to FPCO and OSEP accordingly.

Finally, your letter indicates you have probable cause to believe that all students in the SUCCESS classroom at Annette Perry Elementary School may be subject to abuse and/or neglect. As you are aware, as a "professional" under Texas Family Code Section 261.101(b), you are obligated to make a report as required by law if you have cause to believe that a child has

#648025

17

Ms. Colleen Elbe
June 10, 2014
Page 2

been or may be abused or neglected within forty-eight (48) hours after you first suspect abuse or neglect.  Further, failure to make a report is subject to criminal penalty.  The District is not aware of the allegations you referenced, however, the District will expect that you will make any such required report in accordance with the Family Code and will certainly cooperate with the appropriate authorities in any resulting investigation(s).

Thank you for your cooperation and assistance in this matter.

Very truly yours,

Mari M. McGowan

MMM/slb

cc:   Dr. Jim Vaszauskas (*via email*)
      Dr. Kyle Heath (*via email*)

#648025

18

Exhibit D



June 16, 2014

Abernathy Roeder Boyd & Joplin, P.C.
Attn: Marianna M. McGowan
1700 Redbud Blvd., Suite 300
McKinney, TX 75070

Via email (mmcgowan@abernathy-law.com) and certified mail

Re: **Mansfield ISD/SUCCESS classroom at Annette Perry Elementary School**

Dear Ms. McGowan:

This letter functions as a courtesy response to your correspondence dated June 10, 2014 regarding Disability Rights Texas' request for the contact information of the guardians of Annette Perry Elementary students in the SUCCESS classroom in 2013-2014 and scheduled to be in the class for the start of the 2014-2015 school year. You raised several concerns with our original request for this information, for which additional authority and precedence is included in this correspondence.

First, you alleged that the requested information is confidential under FERPA and IDEA and stated that you would be contacting FPCO and OSEP for further guidance. In our initial request, we provided you with citations to case law that specifically state that FERPA and IDEA confidentiality provisions do not prevent educational institutions and agencies from providing a Protection and Advocacy System with records.

Furthermore, in *State of Con. Office of Prot. & Advocacy for Persons with Disabilities* v. *Hartford Bd. Of Educ.*, 464 F.3d 229, 236 (2d Cir.2006), the court requested the U.S. Department of Education (DOE) and the U.S. Department of Health and Human Services (HHS) to file amicus briefs regarding the issue of FERPA and IDEA and disclosure of student names and parental contact information to the P&A. (attached for your convenience) The court stated:

> DOE and HHS accepted our invitation and filed a joint brief with the Court, which, in significant part, rejects defendants' arguments. With respect to defendants' FERPA defense, the agencies explain that FERPA's non-disclosure requirements are limited to tangible records and information derived from records and that FERPA does not prohibit an [P&A] representative from observing a classroom or speaking with students. They note that DOE has previously adopted this interpretation in informal guidance. Brief for Amici Curiae Department of Education & Department of Health & Human Services ("United States Br.") at 12-13 & n.5 (citing Dep't of Educ., Dec. 8, 2003 Letter to S. Mamas). DOE and HHS also explain that, to the extent FERPA prohibits defendants from releasing the names and contact information for students who [P&A] has probable cause to believe were subject to abuse or neglect, the P & A Acts should be construed "as a limited override of FERPA's non-disclosure requirements" in the circumstances presented by this case. United States Br. at 18.

4747 South Loop 289, Suite 120
Lubbock, TX 79424
MAIN OFFICE 806.765.7794
TOLL-FREE 800.315.3876
FAX 806.765.0496
www.DisabilityRightsTx.org

Protecting and Advocating the rights of Texans with
disabilities — because all people have dignity and worth.

DHHS and DOE interpreted the PADD Act as "expressly contemplat[ing] that a school or other facility will provide contact information to a P & A in order to allow the P & A to carry out its responsibility to investigate abuse or neglect." United States Br. at 14. The agencies concluded that "FERPA does not bar a P & A from obtaining access to the name of and contact information for a parent, guardian, or other legal representative." United States Br. at 15. *See also Disability Law Center of Alaska, Inc.* v. *Anchorage School Dist.,* 581 F.3d 936, 940 (9th Cir. 2009); *Disability Rights Wisconsin Inc. v. State of Wisconsin Department of Public Instruction,* 463 F.3d 719, 730 (7th Cir. 2006).

Although the 5th circuit has not ruled directly on this issue, clearly DOE, HHS, (as well as the 2nd, 7th, and 9th Circuits) are all of the opinion that such release will not violate FERPA or IDEA. Additionally, where an agency is tasked with administering a statute, courts defer to its interpretation. *Chevron v. Natural Res. Def. Council,* 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *Hertzberg v. Dignity Partners, Inc.,* 191 F.3d 1076, 1082 (9th Cir.1999) (An agency's interpretation expressed in an amicus brief receives the same deference.).

In your response letter dated June 10, 2014, you incorrectly equated the P&A probable cause standard with the mandated reporting laws under the Texas Family Code, when in fact, these are two completely separate standards of "proof." P&A probable cause "can be the result of monitoring or other activities including media reports and newspaper articles"[1] or can even arise from an anonymous telephone call providing sufficient evidence.[2] Specifically, a P&A's probable cause to investigate is defined as simply "reasonable grounds for belief that an individual with mental illness has been, **or may be** at significant risk of being subject to abuse or neglect."[3] Under the Texas Family Code however, only a "person having cause to believe that a child's physical or mental health or welfare **has been** adversely affected by abuse or neglect by any person shall immediately make a report as provided by this subchapter."[4] Additionally, the P&A definitions of abuse and neglect are much broader than Texas's definitions for abuse and neglect in a school setting. In fact, the Texas statutes explicitly state that "[a]buse and neglect in this context *do not include* use of restraints or seclusion that do not meet the statutory definitions of child abuse or neglect." 40 T.A.C. §700.403(b)(1)(emphasis added). Yet the P&A statutes define neglect to include acts or omissions such as failure to: establish or carry out an appropriate individual program or treatment plan. 42 C.F.R. §51.2.

Therefore, Disability Rights Texas requested the contact information of the guardians under proper probable cause to investigate and determine if abuse or neglect has occurred that would not necessarily give rise to the mandated reporting under state statutes. DRTx staff take the responsibility to report abuse and neglect seriously and will make the appropriate reports if, after our investigation, there is reason to believe that abuse or neglect in accordance with Texas statues of students with disabilities has in fact occurred in the SUCCESS classroom.

I hope this provides you and your client with sufficient information to allay your concerns and answer your questions regarding our P&A access authority and FERPA. We look forward to receiving the requested information from you within 3 business days. Please note that if MISD refuses to provide DRTx with the

---

[1] 45 CFR §1386.22(a)(iii)
[2] *Alabama Disabilities Advocacy Program v. J.S. Tawater Dev. Ctr.,* 97 F. 3d 492, 498-99 (11th Cir. 1996).
[3] 42 CFR §51.2; *also see* 42 CFR §1386.19
[4] Tex. Fam. Code §261.101(b)

requested information, DRTx may choose to exercise the option provided to it under the PAIMI and/or PADD Acts and file a lawsuit in federal district court seeking to compel MISD to provide this information.

Sincerely,

*Elbe*

Colleen Elbe
Attorney/Regional Manager

Encl: Brief for Amici Curiae Department of Education & Department of Health & Human Services ("United States Br.")

# 05-1240-CV

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

STATE OF CONNECTICUT OFFICE OF PROTECTION AND ADVOCACY
FOR PERSONS WITH DISABILITIES; and JAMES McGAUGHEY,
EXECUTIVE DIRECTOR, STATE OF CONNECTICUT, OFFICE OF
PROTECTION AND ADVOCACY FOR PERSONS WITH DISABILITIES,
Plaintiffs-Appellees,

v.

HARTFORD BOARD OF EDUCATION; HARTFORD PUBLIC SCHOOLS;
and ROBERT HENRY, SUPERINTENDENT OF SCHOOLS,
Defendants-Appellants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

BRIEF FOR AMICI CURIAE THE DEPARTMENT OF EDUCATION
AND THE DEPARTMENT OF HEALTH AND HUMAN SERVICES

PETER D. KEISLER
  Assistant Attorney General
KEVIN J. O'CONNOR
  United States Attorney
GREGORY G. KATSAS
  Deputy Assistant Attorney General
MARK B. STERN
  (202) 514-4332
SHARON SWINGLE
  (202) 353-2689
  Attorneys, Civil Division
  Department of Justice
  950 Pennsylvania Ave., N.W.
  Washington D.C. 20530-0001

23

Pursuant to 28 U.S.C. § 517, Fed. R. App. P. 29(a), and this Court's March 13, 2006, invitations to the Department of Education (DOE) and the Department of Health and Human Services (HHS), we hereby submit this brief as *amici curiae.* Congress has charged HHS and DOE with administering and enforcing the federal statutes at issue in this litigation. The agencies' construction of those statutes — as set out both in implementing regulations and in this brief— is entitled to substantial deference by this Court. *See, e.g., United States v. Mead Corp.*, 533 U.S. 218, 227-228 (2001).

## STATEMENT OF ISSUES ADDRESSED

1.     Whether the "facilities" subject to oversight under the Protection and Advocacy for Individuals with Mental Illness Act, 42 U.S.C. § 10801 *et seq.* (PAIMI Act), include a non-residential public school for severely emotionally disturbed children.

2.     Whether an Office of Protection and Advocacy (P&A) in a participating State shall have authority under the PAIMI Act, the Developmental Disabilities Assistance and Bill of Rights Act, 42 U.S.C. § 15001 *et seq.* (the DD Act), or 29 U.S.C. § 794e, as implemented, to interview a minor suspected of being subject to abuse or neglect without the prior consent of a parent or guardian.

3.     Whether a school for severely emotionally disturbed children must provide a P&A with the names of and contact information for parents of students

suspected of being subject to abuse or neglect, notwithstanding restrictions on the release of information from student records imposed by the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g (FERPA).

## BACKGROUND

### A.   <u>Statutory and regulatory background</u>.

This case involves four federal statutes:  FERPA and 29 U.S.C. § 794e, enforced by DOE; and the PAIMI Act and the DD Act, enforced by HHS.

1.   <u>Family Educational Rights and Privacy Act (FERPA)</u>.  FERPA denies federal funding to an educational institution with a policy or practice of releasing information from a minor student's records without a parent's or guardian's prior written consent. *See* 20 U.S.C. § 1232g.  Covered records include "records, files, documents, and other materials" maintained by a school containing "information directly related to a student." *Id.* § 1232g(a)(4)(A).

FERPA contains several potentially relevant exceptions to the bar on release of information from student records.  Disclosure is permitted to "authorized representatives" of "State educational authorities," as "may be necessary in connection with * * * the enforcement of the Federal legal requirements which relate to [Federally-supported education programs]." *Id.* § 1232g(b)(3).

FERPA also contains a "directory information" provision, which exempts certain information (including a student's name, address, and telephone number)

from the ban on disclosure so long as the educational institution gives prior notice of the type of information to be made public and provides a reasonable opportunity for parents to direct "that any or all of the information designated shall not be released." *Id.* § 1232g(b)(5)(A)-(B). "Directory information" is information in a student's record "that would not generally be considered harmful or an invasion of privacy if disclosed." 34 C.F.R. § 99.3.

FERPA permits the disclosure of information from student records where "furnished in compliance with judicial order, or pursuant to any lawfully issued subpoena." 20 U.S.C. § 1232g(b)(2)(B). FERPA also permits the disclosure of information from student records "in connection with an emergency * * * if the knowledge of such information is necessary to protect the health or safety of the student or other persons." *Id.* § 1232g(b)(1)(I).

2.   Protection and Advocacy for Individuals with Mental Illness Act (PAIMI Act). The PAIMI Act seeks to protect the rights of individuals with mental illness by requiring, as a condition of federal funding, that States establish protection and advocacy systems (P&As) with authority to investigate and remedy suspected abuse or neglect at facilities rendering care or treatment to the mentally ill. *See* 42 U.S.C. § 10801(b). The "facilities" covered by the PAIMI Act include, but are not limited to, nursing homes, community facilities, board and care homes, homeless shelters, and prisons. 42 U.S.C. § 10802(3). Since 2000, the individuals

3

with mental illness sought to be protected have included individuals who "live[] in a community setting, including their own home." *Id.* § 10802(4)(B)(ii).

The PAIMI Act provides that P&As shall have broad investigatory access to carry out their responsibility to protect individuals with mental illness and to advocate on their behalf, 42 U.S.C. § 10805(a)(1).  P&As shall have a right of "access to facilities * * * providing care or treatment" to the mentally ill, 42 U.S.C. § 10805(a)(3), and also to "reasonable unaccompanied access to residents at all times necessary to conduct a full investigation" of suspected abuse or neglect.  42 C.F.R. § 51.42(b).  A P&A shall also have "reasonable unaccompanied access to facilities," programs, and residents of a facility in order to monitor whether rights and safety are adequately safeguarded.  *Id.* § 51.42(c); *see also* 42 U.S.C. § 10805(a)(3).  Finally, a P&A shall have authority to access "all records of individuals with mental illness" where (1) the individual's parent or guardian has consented to access; (2) the individual has no parent or guardian and the P&A has determined there is probable cause[1] to believe that the individual has been or may be subject to abuse or neglect; or (3) the P&A has probable cause to believe that an individual's health or safety is in serious and immediate jeopardy,

---

[1] Under both the PAIMI Act and the DD Act, "probable cause" means reasonable grounds to believe that an individual "has been, or may be at significant risk of being subject to abuse or neglect."  42 C.F.R. § 51.2; 45 C.F.R. § 1386.19.

4

has notified the individual's guardian or other legal representative "upon receipt of the name and address of such representative," has offered assistance to resolve the situation, and the representative has failed or refused to act.  42 U.S.C. § 10805(a)(4); *see also* 42 C.F.R. § 51.41(b)(3).[2]

If a P&A is denied access to facilities, programs, individuals, or records, it must "be provided promptly with a written statement of reasons, including, in the case of a denial for alleged lack of authorization, the name, address and telephone number of the legal guardian, conservator, or other legal representative of an individual with mental illness." 42 C.F.R. § 51.43.

3.    <u>Developmental Disabilities Assistance and Bill of Rights Act (DD Act)</u>.  The DD Act directs States, as a condition of federal funding, to establish P&As "to protect the legal and human rights of individuals with developmental disabilities." *See* 42 U.S.C. § 15001(b)(1).  The DD Act seeks to ensure that publicly funded programs, including educational programs serving individuals with developmental disabilities, provide care that is free of abuse or neglect. *Id.* § 15009(a)(3)(B)(i).  In relevant part, the DD Act provides that P&As shall protect

---

[2] Under both the PAIMI Act and the DD Act, as implemented, a P&A that obtains medical records must maintain their confidentiality. *See* 42 U.S.C. § 10806(a); 45 C.F.R. § 1386.22(e)(1).

and advocate for the rights of individuals with developmental disabilities,

including investigating "incidents of abuse and neglect." *Id.* § 15043(a)(2).

The DD Act's access provisions are similar to those under the PAIMI Act.

P&As shall be given "access at reasonable times to any individual with a

developmental disability in a location in which services, supports, and other

assistance are provided." *Id.* §§ 15043(a)(2)(H), 15041; *see also* 45 C.F.R. §

1386.22(f)-(h) (P&A shall have reasonable unaccompanied access to facilities and

individuals, in order to investigate suspected abuse or neglect and to monitor

rights and safety). P&As also shall have access to the records of a

developmentally disabled individual where (1) a parent or guardian has consented;

(2) the individual has no parent or guardian and the P&A has probable cause to

believe that the individual has been subject to abuse or neglect; or (3) the P&A has

probable cause to believe that the individual has been subject to abuse or neglect,

has notified the individual's guardian or other legal representative "upon receipt of

the name and address of such representative," has offered assistance to resolve the

situation, and the representative has failed or refused to act. 42 U.S.C.

§ 15043(a)(2)(I). If the P&A has probable cause "to believe that the health or

safety of the individual is in serious and immediate jeopardy," it shall have access

to records immediately without notice to or consent from a parent or guardian. *Id.*

§ 15043(a)(2)(J)(ii).

If a P&A is denied access, it must be given a written explanation, including the name of and contact information for a parent or guardian in cases of alleged lack of authorization.  45 C.F.R. § 1386.22(i).

4.    <u>29 U.S.C. § 794e.</u>

In 29 U.S.C. § 794e, Congress provides funding to States to establish P&As to protect the legal and human rights of disabled individuals not covered by the PAIMI Act or the DD Act.  Section 794e provides that P&As shall pursue legal, administrative, and other remedies to protect the rights of disabled individuals, and shall have the same "general authorities, including access to records," as under the DD Act.  *Id.* § 794e(f)(2); *see also* 34 C.F.R. § 381.10(a)(2).

**B.    <u>Factual and Procedural Background.</u>**

_____This case arises out of the Connecticut P&A's investigation of suspected abuse or neglect at the Hartford Transitional Learning Academy (Academy), a non-residential public school in Connecticut that serves seriously emotionally disturbed children.  *See* J.A. 10, 64.  After the Academy denied the P&A access to students and refused to provide the names of and contact information for students' parents or guardians, the P&A brought this action in district court, which ordered the Hartford Board of Education to provide the access and information sought. 355 F. Supp. 2d 649 (D. Conn. 2005).

7

30

## ARGUMENT

I.    **UNDER THE PAIMI ACT, A P&A SHALL HAVE AUTHORITY TO INVESTIGATE ABUSE OR NEGLECT AT A NON-RESIDENTIAL FACILITY PROVIDING CARE OR TREATMENT TO THE MENTALLY ILL.**

The PAIMI Act provides that P&As shall have authority to "investigate incidents of abuse and neglect of individuals with mental illness" committed by employees or staff of "facilities" rendering care or treatment.  42 U.S.C. §§ 10805(a)(1)(A), (3), 10802(1), (5).  HHS reasonably interprets the statute to apply to a broad range of facilities, including non-residential facilities, that render care or treatment to mentally ill individuals.  A non-residential school for severely emotionally disturbed children is thus within the scope of the PAIMI Act.[3]

_____

[3] We note, however, that the Court need not decide this question because, as the district court correctly held, the Connecticut P&A was authorized pursuant to the DD Act and 29 U.S.C. § 794e to investigate abuse or neglect at the Academy, which serves numerous children with developmental and other disabilities.  355 F. Supp. 2d at 654, 656-657.  The DD Act recognizes that public funds should support only "community programs, including educational programs in which individuals with developmental disabilities participate," providing care that is free from abuse or neglect, and also that non-residential programs should provide appropriate care to the individuals they serve.  42 U.S.C. § 15009(a)(3)(B)(i), (a)(4)(B)(iii).  In order to protect these "legal and human rights of individuals with developmental disabilities," the DD Act requires that P&As be authorized to have "access at reasonable times to any individual with a developmental disability in a location in which services, supports, and other assistance are provided to such an individual." _Id._ § 15043(a)(2)(H), 15001(b)(2); _see also_ 29 U.S.C. § 794e(f)(2) (incorporating same access rights).

As originally enacted in 1986, the PAIMI Act applied only to mentally ill individuals who were inpatients or residents of facilities rendering care or treatment. *See* Pub. L. No. 99-319, Title I, § 102, 100 Stat. 478, 479. In 1991, Congress amended the statute to define explicitly the "facilities" covered by the statute, which "may include, but need not be limited to, hospitals, nursing homes, community facilities for individuals with mental illness, board and care homes, homeless shelters, and jails and prisons." Pub. L. No. 102-173, § 4, 105 Stat. 1217; *see also* S. Rep. No. 114, 102d Cong., 1st Sess., 2-3, 4 (1991).

In 2000, Congress again broadened the reach of the Act to include within its scope mentally ill individuals who "live[] in a community setting, including their own home." Pub. L. No. 106-310, Div. B, Title XXXII, § 3206(b)(1)(B), 114 Stat. 1194. The statutory change was part of a set of amendments to strengthen community-based mental health services and enable children with severe emotional disturbances to "remain in local communities rather than being sent to residential facilities." S. Rep. No. 196, 106th Cong., 1st Sess. 1, 6 (1999). The specific change to the PAIMI Act was intended to ensure that P&As could "work on behalf of [mentally ill] persons living at home," who might "be subject to abuse or neglect or discrimination in housing, health care, employment or benefits." *Id.* at 25-26. It was also intended to ensure that P&As would have the same authority as provided pursuant to the DD Act, *see id.* at 26 — which, as we have explained

9

(at n. 3, *supra*), directs that a P&A shall be authorized to investigate suspected abuse or neglect at *any* location providing services or support. *See* 42 U.S.C. § 15043(a)(2)(H).

In light of this statutory text and history, HHS reasonably interprets the investigatory authority of a P&A pursuant to the PAIMI Act as extending to any facility providing care and treatment to the mentally ill, regardless of whether the facility is residential.[4] The agency's interpretation is fully consistent with the statutory definition of "facilities," both because the definition's list of the types of facilities covered by the statute is non-exhaustive, and because, in any event, the definition includes "community facilities for individuals with mental illness." *Id.* § 10802(3). Construing the PAIMI Act to apply to non-residential facilities also effectuates Congress' intent that protection and advocacy services be provided to *all* individuals with mental illness, including those living at home. The defendants' narrower construction of the PAIMI Act is inconsistent with its text, history, and purpose.

---

[4] As the district court correctly recognized, to the extent that HHS's 1997 regulations are inconsistent with the agency's current construction of the PAIMI Act, the regulations have been legislatively superseded. 355 F. Supp. 2d at 659.

10

33

## II.   A P&A MAY INTERVIEW A MINOR STUDENT SUSPECTED OF BEING SUBJECT TO ABUSE OR NEGLECT WITHOUT PRIOR CONSENT FROM A PARENT OR GUARDIAN.

Under the PAIMI Act, the DD Act, and 29 U.S.C. § 794e, a P&A shall be authorized to interview a minor student at a school for severely emotionally disturbed children, if the P&A determines that the student is subject to abuse or neglect.  In exercising its authority, the P&A is not required to provide advance notice to a parent or guardian, or to obtain prior consent.

The DD Act provides that a P&A "shall * * * have the authority to have access at reasonable times to any individual with a developmental disability in a location in which services, supports, and other assistance are provided to such individual," in order to protect the individual's legal and human rights.  42 U.S.C. §§ 15043(a)(2)(H), 15041.  The DD Act also provides that a P&A shall "have the authority to investigate incidents of abuse and neglect."  *Id.* § 15043(a)(2)(B).  The DD Act does not condition these rights of access to individuals — which are also incorporated by reference in 29 U.S.C. § 794e(f)(2), with regard to other disabled individuals — on notice to and consent from an individual's parent or guardian. In contrast, where a P&A seeks records, the DD Act requires parental notification and, in some circumstances, an attempt to obtain parental consent, as a condition of access.  *Id.* § 15043(a)(2)(I)(iii), (J).  The clear import is that Congress intended for P&As to have authority to interview disabled individuals suspected of being

11

subject to abuse or neglect, with no requirement of prior parental notification or consent.

Similarly, the PAIMI Act provides that a P&A shall have authority to "have access to facilities * * * providing care or treatment" to individuals with mental illness, and also shall have authority to "investigate incidents of abuse and neglect." 42 U.S.C. §§ 10805(a)(3), (a)(1)(A).  As implemented by HHS, the statutes require that a P&A have a right of reasonable unaccompanied access to an individual served by a covered program "at all times necessary to conduct a full investigation of an incident of abuse or neglect."  42 C.F.R. § 51.42(b)-(c).  Under the statute and implementing regulations, a P&A's authority to access individuals or facilities is not conditioned on parental notification or consent — unlike access to records, where notice and consent are usually required.  *See* 42 U.S.C. § 10805(a)(1)(A), (a)(3); 42 C.F.R. § 51.42(d)-(e).

Finally, the defendants are incorrect to assert (at Def. Br. 9-10) that P&A interviews of minor students implicate FERPA's restrictions on the release of information from education records.  FERPA applies only to the disclosure of tangible records and of information derived from tangible records.  It does not

12

apply to a P&A's discovery of information about a student as a result of physical access to that student or the student's school.[5]

### III.   A SCHOOL MUST PROVIDE A P&A WITH THE NAME OF AND CONTACT INFORMATION FOR THE PARENT OR GUARDIAN OF A STUDENT FOR WHOM THE P&A HAS THE REQUISITE DEGREE OF PROBABLE CAUSE TO OBTAIN RECORDS UNDER THE DD ACT OR THE PAIMI ACT.

A.   The DD Act — and, by incorporation, 29 U.S.C. § 794e — require that a P&A be authorized to obtain names and contact information for the parent or guardian of a disabled student reasonably believed by the P&A to be subject to abuse or neglect.  The PAIMI Act requires that a P&A have authority to obtain that information for a mentally ill student whose health or safety the P&A believes to be in serious and immediate jeopardy.

In relevant part, the PAIMI Act requires a P&A to have authority to access records of an individual with a mental illness where the P&A has probable cause to believe that the individual's health or safety is in serious and immediate jeopardy, and the individual's parent, guardian, or other legal representative has

--------

[5] *See* Dep't of Educ., Dec. 8, 2003, Letter to S. Mamas (explaining that FERPA does not prohibit a parent or professional from observing a child in a classroom, because FERPA "does not protect the confidentiality of information in general," but only "tangible records" and information derived from them); Dep't of Educ., Recent Amendments to Family Educational Rights and Privacy Act Relating to Anti-Terrorism Activities, at 4 (Apr. 12, 2002) ("Nothing in FERPA prohibits a school official from disclosing * * * information that is based on that official's personal knowledge or observation * * *.").

13

failed to act after being contacted by the P&A "upon receipt of the name and address of such representative." 42 U.S.C. § 10805(a)(4)(C).  The DD Act requires that a P&A have authority to access records in similar circumstances, following "receipt of the name and address" of the individual's representative.  *Id.* § 15043(a)(2)(I)(iii).  These provisions thus expressly contemplate that a school or other facility will provide contact information to a P&A in order to allow the P&A to carry out its responsibility to investigate abuse or neglect.  Regulations promulgated under the statutes accordingly require that, where a facility or location denies a P&A access to records, it must provide "a written statement of reasons, including, in the case of a denial for alleged lack of authorization, the name, address and telephone number" of the individual's guardian or other representative.  *See* 42 C.F.R. § 51.43; 45 C.F.R. § 1386.22(i).[6]

Thus, to the extent that the Connecticut P&A had probable cause to believe that the health or safety of mentally ill students at the Academy was in serious or

---

[6] As a practical matter, a P&A might be unaware, when it requests access to records, whether the affected individual has a parent, guardian, or other legal representative.  If not, or if the individual's legal representative is the State, the P&A is entitled to access based on its probable cause determination.  *See* 42 U.S.C. §§ 10805(a)(4)(B), 15043(a)(2)(I)(ii).  The P&A would only learn of the legal representative's existence — and his or her name and contact information — when the facility or location resists access on the ground of lack of authorization.

14

immediate jeopardy, or that disabled students were subject to abuse or neglect,[7] the P&A had a clear right to the name and contact information of those children's parents, guardians, or other legal representatives.

B.    FERPA does not bar a P&A from obtaining access to the name of and contact information for a parent, guardian, or other legal representative of a minor student with a disability or mental illness, where the P&A's probable cause determination satisfies the requirements for access to records under the PAIMI Act and the DD Act.  To the extent that the statutes are in conflict, the specific access provisions of the PAIMI Act and the DD Act (and 29 U.S.C. § 794e, by incorporation) are properly understood as a limited override of FERPA's generally applicable non-disclosure requirements.

In some circumstances, disclosures from student records to a P&A might fall under FERPA's health and safety exception.  The facts supporting a P&A's determination that a mentally ill student's health or safety is in serious and immediate jeopardy, *see* 42 U.S.C. § 10805(a)(4)(C), for example, might also support a school's determination that an "emergency" existed in which disclosure

---

[7] HHS and DOE take no position on the issue whether the Connecticut P&A's probable cause determination extends to all students at the Academy.  As HHS has previously noted, however, "neither the Act nor case law imposes an individual-specific probable cause requirement," and probable cause may appropriately be based on "general conditions or problems that affect many or all individuals in a facility."  62 Fed. Reg. 53,548, 53,559 (Oct. 15, 1997).

of information was "necessary to protect the health or safety of the student or other persons." 20 U.S.C. § 1232g(b)(1)(I).

As a categorical matter, however, a P&A's request for name and contact information under the PAIMI Act and the DD Act would not always satisfy a FERPA exception to non-disclosure. If a P&A seeks to investigate past abuse or neglect, or abuse or neglect that does not place students' health or safety in serious and immediate jeopardy, there might be no "emergency" necessitating disclosure under FERPA. *See* 34 C.F.R. § 99.36(c) (exception to be strictly construed).

Nor would the FERPA provision permitting disclosure of information to "State educational authorities" apply. A state educational authority is an agency or other entity with educational expertise and experience, charged with regulating, planning, or supervising state educational programs and services. *See* Dep't of Educ., Jul. 11, 2005, Letter to D. Wilkins. In contrast, P&As — which might be private organizations rather than state authorities — need not be educational experts and are not charged with planning or regulating educational programs *per se.*

Release of record information to a P&A under FERPA's directory information exception would not be proper, because that exception contemplates that parents can opt out of disclosure. *See* 20 U.S.C. § 1232g(a)(5)(B). Furthermore, the exception would not permit a P&A to seek information regarding

16

39

students identified by their disability status or receipt of a particular treatment, because it does not permit the disclosure of directory information which would also disclose non-directory information, such as a student's assignment to a class for developmentally disabled students or receipt of a particular form of therapy. *See* 65 Fed. Reg. 41,852, 41,855 (July 6, 2000).

Finally, it would be inappropriate to require a P&A to obtain parental consent or a court order as a necessary condition to seeking access to student records pursuant to the PAIMI Act or the DD Act. Those statutes require a P&A to contact an individual's parent or guardian as a condition of access to records. If a school or other facility could refuse to provide name and contact information, it could interfere substantially with a P&A's investigation of abuse or neglect, thereby thwarting Congress' intent that P&As act to protect vulnerable populations from abuse or neglect. And requiring a P&A to seek a court order as a condition of access would be inconsistent with a statutory scheme providing for speedy access to records, *see* 42 U.S.C. § 15043(a)(2)(J), based on a determination of possible abuse or neglect made by a P&A rather than a judicial officer,[8] and

---

[8] Although HHS and DOE agree that a P&A is not required as a condition of access to obtain a judicial determination of probable cause, we disagree with the suggestion that a P&A's probable cause determination is immune from judicial review. *See* 62 Fed. Reg. at 53,552; 61 Fed. Reg. 51,142, 51,145 (Sept. 30, 1996).

17

under a substantive standard different from Fourth Amendment requirements for a judicial warrant. *See* 42 C.F.R. § 51.2; 45 C.F.R. § 1386.19.

Given the conflict between the access rights afforded to a P&A pursuant to the PAIMI Act and the DD Act, and the non-disclosure requirements imposed by FERPA, this Court should reject the defendants' invitation to constrain the P&A's broad investigatory authority to those limited circumstances set forth in FERPA's exceptions. Instead, the Court should construe the PAIMI Act and the DD Act as a limited override of FERPA's non-disclosure requirements, in the narrow context where those statutes require that a P&A have authority to obtain student records held by an institution servicing disabled and/or mentally ill students.

When Congress enacted the relevant access provisions of the PAIMI Act in 1991 and the DD Act in 2000, it did so against an existing background of student record privacy pursuant to FERPA, enacted in 1974. There is no indication that Congress believed that the carefully tailored access rights required under those later-enacted statutes would be subordinate to the general privacy requirements of FERPA. *Cf. United States v. Estate of Romani*, 523 U.S. 517, 532 (1998) (treating "later" and "more specific statute" as governing); *Radzanower v. Touche Ross Co.*, 426 U.S. 148, 153 (1976) (statute dealing with "narrow, precise, and specific subject" should be given effect in preference to "statute covering a more generalized spectrum"); *see also* Dep't of Educ., Nov. 29, 2004, letter to M. Baise,

18

University of New Mexico (federal statute conditioning funding on States'
adoption of mandatory reporting requirements for child abuse and neglect
superseded inconsistent provisions of FERPA); Dep't of Educ., Nov. 25, 1997,
letter to J. Talisman, Department of the Treasury (concluding that federal law
requiring educational institutions to report certain tuition payment information to
IRS was inconsistent with FERPA but, "as the later enacted and more specific
statute," reflected Congress' intent to supersede applicable FERPA provisions).

Furthermore, the construction of the statutes that gives greatest effect to
their provisions is to read the record access provisions of the PAIMI Act and the
DD Act as a limited override of FERPA.  Congress' intent that P&As have broad
investigatory authority would be thwarted if the P&A's right of access to parental
contact information or other information from student records were limited to
circumstances that satisfy a FERPA exception to non-disclosure.  On the other
hand, permitting access as provided for under the PAIMI Act and the DD Act is
generally consistent with Congress' intent relating to student privacy.  FERPA
permits disclosure of information to state and federal officials in certain
circumstances where disclosure is necessary for enforcement of federal legal
requirements.  *See* 20 U.S.C. § 1232g(b)(3).  FERPA also permits disclosure of
parents' names and contact information, indicating Congress' view that such
information is less sensitive than other information contained in student records.

19

And FERPA permits disclosure of information to protect students' health and safety in emergency situations.  Although none of these precise exceptions applies here, taken together they suggests that disclosure of contact information to a P&A — which, significantly, functions as an advocate for a student rather than as a disinterested outsider — would be generally consistent with FERPA's requirements.  Furthermore, because a P&A is required to maintain the confidentiality of any student records it receives, *see* 42 U.S.C. § 10806(a); 45 C.F.R. § 1386.22(e), there is little risk of the public disclosure of information that FERPA is intended to prevent.  In those circumstances, the proper construction of the statutes is that the PAIMI Act and the DD Act provide for a limited override of FERPA to permit a P&A to access names and contact information for the parents or guardians of disabled or mentally ill students, where the P&A's determination of probable cause satisfies the substantive standards for record access.

## CONCLUSION

For the foregoing reasons, this Court should affirm the judgment of the district court.

Respectfully submitted,

PETER D. KEISLER
   Assistant Attorney General
KEVIN J. O'CONNOR
   United States Attorney
GREGORY G. KATSAS
   Deputy Assistant Attorney General
MARK B. STERN
   (202) 514-4332
SHARON SWINGLE
   (202) 353-2689
   Attorneys, Civil Division
   Department of Justice
   950 Pennsylvania Ave., N.W.
   Washington D.C. 20530-0001

JUNE 2006

44

## CERTIFICATE OF SERVICE

I certify that on June 2, 2006, I filed the foregoing Brief for Amici Curiae

the Department of Education and the Department of Health and Human Services

by causing it to be sent to the Court and the following counsel by overnight

delivery:

Ann Bird
Assistant Corporation Counsel
City of Hartford
550 Main Street
Hartford, CT  06103
(860) 543-8575

Nancy Alisberg
Office of Protection & Advocacy for
   Persons with Disabilities
60B Weston Street
Hartford, CT  06120
(860) 297-4300

_____
Sharon Swingle

# TABLE OF CONTENTS

*Page*

STATEMENT OF ISSUES ADDRESSED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    Statutory and Regulatory Background . . . . . . . . . . . . . . . . . . . . . . 2

        1.    Family Educational Rights and Privacy Act (FERPA) . . . . . . 2

        2.    Protection and Advocacy for Individuals with
            Mental Illness Act (PAIMI Act) . . . . . . . . . . . . . . . . . . . . . . . 3

        3.    Developmental Disabilities Assistance and Bill
            of Rights Act (DD Act) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        4.    29 U.S.C. § 794e . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    B.    Factual and Procedural Background . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

I.    UNDER THE PAIMI ACT, A P&A SHALL HAVE AUTHORITY
    TO INVESTIGATE ABUSE OR NEGLECT AT A NON-
    RESIDENTIAL FACILITY PROVIDING CARE OR TREATMENT
    TO THE MENTALLY ILL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

II.    A P&A MAY INTERVIEW A MINOR STUDENT SUSPECTED
    OF BEING SUBJECT TO ABUSE OR NEGLECT WITHOUT
    PRIOR CONSENT FROM A PARENT OR GUARDIAN . . . . . . . . . . . 11

i

III.   A SCHOOL MUST PROVIDE A P&A WITH THE NAME OF AND
       CONTACT INFORMATION FOR THE PARENT OR GUARDIAN
       OF A STUDENT FOR WHOM THE P&A HAS THE REQUISITE
       DEGREE OF PROBABLE CAUSE TO OBTAIN RECORDS
       UNDER THE DD ACT OR THE PAIMI ACT  . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CERTIFICATE OF SERVICE

ANTI-VIRUS CERTIFICATION FORM

# TABLE OF AUTHORITIES

*Cases:*

*Radzanower v. Touche Ross Co.*, 426 U.S. 148 (1976) .................. 18

*United States v. Mead Corp.*, 533 U.S. 218 (2001) ...................... 1

*United States v. Estate of Romani*, 523 U.S. 517 (1998) ................ 18

*Statutes and Public Laws:*

Family Educational Records Privacy Act:
    20 U.S.C. § 1232g ........................................ 2
    20 U.S.C. § 1232g(a)(4)(A) ............................... 2
    20 U.S.C. § 1232g(a)(5)(B) ............................... 16
    20 U.S.C. § 1232g(b)(1)(I) .............................. 3, 16
    20 U.S.C. § 1232g(b)(2)(B) ............................... 3
    20 U.S.C. § 1232g(b)(3) ................................ 2, 19
    20 U.S.C. § 1232g(b)(5) ................................ 3, 16

28 U.S.C. § 517 ............................................. 1

29 U.S.C. § 794e ........................................ 1, 7, 8, 13, 15
29 U.S.C. § 794e(a) .......................................... 7
29 U.S.C. § 794e(f)(2) ..................................... 7, 8, 11

Protection and Advocacy for Individuals with Mental Illness Act:
    42 U.S.C. § 10801 *et seq* ............................... 1
    42 U.S.C. § 10801(b) ..................................... 3
    42 U.S.C. § 10802(1) ..................................... 8
    42 U.S.C. § 10802(3) ................................... 4, 10
    42 U.S.C. § 10802(4)(B)(ii) .............................. 4
    42 U.S.C. § 10802(5) ..................................... 8
    42 U.S.C. § 10805(a)(1) .................................. 4
    42 U.S.C. § 10805(a)(1)(A) ............................. 8, 12
    42 U.S.C. § 10805(a)(3) .............................. 4, 8, 12
    42 U.S.C. § 10805(a)(4) .................................. 5

42 U.S.C. § 10805(a)(4)(B)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
42 U.S.C. § 10805(a)(4)(C)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15
42 U.S.C. § 10806(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 20

Developmental Disabilities Assistance and Bill of Rights Act:
42 U.S.C. § 15001 *et seq* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
42 U.S.C. § 15001(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
42 U.S.C. § 15001(b)(2)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
42 U.S.C. § 15001(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
42 U.S.C. § 15009(a)(3)(B)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8
42 U.S.C. § 15009(a)(4)(B)(iii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
42 U.S.C. § 15041  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11
42 U.S.C. § 15043(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
42 U.S.C. § 15043(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
42 U.S.C. § 15043(a)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
42 U.S.C. § 15043(a)(2)(H)  . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 10, 11
42 U.S.C. § 15043(a)(2)(I)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11
42 U.S.C. § 15043(a)(2)(I)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
42 U.S.C. § 15043(a)(2)(I)(iii) . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14
42 U.S.C. § 15043(a)(2)(J) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 17
42 U.S.C. § 15043(a)(2)(J)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Pub. L. No. 99-319, 100 Stat. 478 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Pub. L. No. 102-173, 105 Stat. 1217 . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Pub. L. No. 106-310, 114 Stat. 1194 . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

***Regulations:***

34 C.F.R. § 99.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
34 C.F.R. § 99.36(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

34 C.F.R. § 381.10(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

42 C.F.R. § 51.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 17
42 C.F.R. § 51.41(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
42 C.F.R. § 51.42(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 12
42 C.F.R. § 51.42(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 12

vi

42 C.F.R. § 51.42(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
42 C.F.R. § 51.42(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
42 C.F.R. § 51.43 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 14

45 C.F.R. § 1386.19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 17
45 C.F.R. § 1386.22(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
45 C.F.R. § 1386.22(e)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
45 C.F.R. § 1386.22(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
45 C.F.R. § 1386.22(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
45 C.F.R. § 1386.22(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
45 C.F.R. § 1386.22(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 14

61 Fed. Reg. 51,142 (Sept. 30, 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

62 Fed. Reg. 53,548 (Oct. 15, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17

65 Fed. Reg. 41,852 (July 6, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Fed. R. App. P. 29(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## Legislative Materials:

S. Rep. No. 114, 102d Cong., 1st Sess. (1991) . . . . . . . . . . . . . . . . . . . . . . . . 9

S. Rep. No. 196, 106th Cong., 1st Sess. (1999) . . . . . . . . . . . . . . . . . . . . . . . 9

## ADDENDUM

For the Court's convenience, we have attached the following administrative materials cited in the brief:

Dep't of Educ., Dec. 8, 2003, Letter to S. Mamas

Dep't of Educ., Recent Amendments to Family Educational
      Rights and Privacy Act Relating to Anti-Terrorism
      Activities (Apr. 12, 2002)

Dep't of Educ., Jul. 11, 2005, Letter to D. Wilkins

Dep't of Educ., Nov. 29, 2004, letter to M. Baise,
      University of New Mexico

Dep't of Educ., Nov. 25, 1997, letter to J. Talisman,
      Department of the Treasury

51

# Exhibit E



# ABERNATHY ROEDER & BOYD JOPLIN • P.C.

1700 Redbud Boulevard, Suite 300 • P.O. Box 1210 • McKinney, Texas 75070-1210

Metro 214.544.4000 • Fax 214.544.4040

ATTORNEYS AT LAW

MARIANNA M. MCGOWAN                                    mmcgowan@abernathy-law.com

June 25, 2014

Ms. Colleen Elbe                              ***VIA CERTIFIED MAIL and***
Disability Rights Texas                       ***VIA EMAIL*** rguerra@disabilityrightstx.org
4747 South Loop 289
Suite 120
Lubbock, Texas 79424

Re:    **Public Information Request to Mansfield Independent School District /**
       **SUCCESS Classroom at Annette Perry Elementary School**

Dear Ms. Elbe:

This letter is written on behalf of the Mansfield ISD in response to your letters dated June 5, 2014, and June 16, 2014 regarding your request for the following information:

> "the names of all students in the SUCCESS classroom at Annette Perry Elementary School during the 2013-2014 school year and those scheduled to start the 2014-2015 school year in the classroom as well as their parent or guardian's name, address, and telephone number."

While the District appreciates the information and argument presented in your letter, it must respectfully disagree with regard to the interpretation of the statutes and case law regarding this matter. As stated in my letter dated June 10, 2014, the District believes the information requested is confidential and not subject to release pursuant to the Family Education Rights and Privacy Act ("FERPA") and the Individuals with Disabilities Education Act of 2004 ("IDEA"), absent parent consent, subpoena, or a court order. Furthermore, Section 552.026 of the Texas Government Code states that "[t]his chapter does not require the release of information contained in education records of an educational agency or institution, except in conformity with the Family Educational Rights and Privacy Act of 1974, Sec. 513, Pub. L. No. 93-380, 20 U.S.C. Sec. 1232g." Your June 4th letter states that since "DRTx is only requesting contact information, FERPA's privacy provisions should not be a barrier." However, the names of students' parents

#648387

53

Ms. Colleen Elbe
June 25, 2014
Page 2 of 3

or guardians, their telephone numbers, and their addresses are not directory information pursuant to Mansfield ISD Board policy FL (LOCAL) and, therefore, not excepted from FERPA under 34 C.F.R. § 99.37. Further, although Mansfield ISD student names are designated as directory information, a school district may not disclose directory information that is linked to non-directory information, such as the names of students in a particular special education program. *See, e.g., Letter to Austin Indep. Sch. Dist.* (FPCO March 2, 2005). It is the District's belief that providing the names of students in the SUCCESS classroom would disclose non-directory student information by identifying the students' special education status and placement in violation of FERPA and IDEA.

Having reviewed your request and the authority cited, Mansfield ISD disagrees that Disability Rights Texas ("DRTx") has a right of access that supersedes the legal protections provided to Mansfield ISD students by FERPA and IDEA. As you note in your request, the enabling legislation for the Protection & Advocacy ("P&A") System permits P&A entities such as DRTx to investigate suspected abuse or neglect of individuals with developmental disabilities and mental illness, where there is probable cause of such. Your request for confidential student records of students in the SUCCESS classroom falls outside of DRTx's statutory mandates in that: the request is not tailored to include only students who have developmental disabilities or mental illness, no facts offered in your request rise to the relevant statutory definitions of abuse or neglect, and Annette Perry Elementary School is not a "facility" within the meaning of the P&A statutes. *See* 42 C.F.R § 51.2 and 45 C.F.R. 1386.19; *see also*, TEX. ATT'Y GEN. OP. NO. 2002-7242 (concluding that Advocacy, Inc. was not entitled to student records related to a school district's investigation into the death of a student because such information was confidential under FERPA and the Texas Government Code at Section 552.026).

Indeed, no federal circuit court or agency has concluded that a P&A system such as DRTx has "probable cause" to suspect abuse or neglect and, therefore, a right of access to the confidential education records on the basis of "multiple news sources and social media outlets" or general data regarding a district's use of restraints. Use of a "calm/blue room" does not constitute probable cause of abuse or neglect. State and local policies address timeout as a behavior management technique in which, to provide student with an opportunity to regain self-control, the student is separated from other students for a limited period in a separate setting that is not locked and from which the exit is not physically blocked by furniture, a closed door held shut from the outside, or another inanimate object. *See* Tex. Educ. Code § 37.0021; 19 Tex. Admin. Code § 89.1053. A student may access the blue/calm room for a cooling off period at the student's own request, or at the direction of staff, as provided in his or her Individual Educational Program ("IEP"). Furthermore, restraint data from the District and TEA is not "probable cause" of abuse or neglect. Restraint is used only when necessary in an emergency situation, in full compliance with state and federal laws. *See* 19 Tex. Admin. Code § 89.1053.

In your June 16th letter, you emphasize that the P&A statutes' definition of neglect includes "acts or omissions such as failure to: establish or carry out an appropriate individual program or treatment plan." *See* 43 C.F.R. § 51.2. However, other state and federal entities are charged with ensuring the appropriateness of the educational plans of disabled students; such allegations are outside the statutory authority of P&A systems. Congress vested the United States Department of

#648387

Ms. Colleen Elbe
June 25, 2014
Page 3 of 3

Education ("USDOE") as the agency responsible for assuring compliance with federal special education law by state and local educational agencies. *See* 20 U.S.C. § 1416. Additional enforcement authority is delegated to state departments of education to investigate and audit local education agencies for compliance with the IDEA and its regulations. 20 U.S.C. § 1232c. Moreover, parents are notified of their right to file a complaint and require an investigation by the state of alleged violations of special education rights. 20 U.S.C. § 1415(f)(3)(F); 34 C.F.R. § 300.504; §§ 300.660, *et seq.* Mansfield ISD provides parents and guardians with a Notice of Procedural Safeguards at least annually and as required by the IDEA. *See* 34 C.F.R. § 300.504.

While the decision in *Conn. Ofc. of Protection and Advocacy For Persons With Disabilities v. Hartford Bd. of Educ.*, 464 F.3d 229 (2nd Cir, 2006) did conclude that a P&A systems could access education records in a therapeutic "community facilit[y] for individuals with mental illness" that "provid[es] care or treatment," that court did not grant to P&A systems access to the records of students in a special education classroom within a typical public elementary school. *See id.* at 239. Furthermore, that case is not within our own Fifth Circuit which has not held that a P&A system have a right of access to public education records.

For these reasons, Mansfield ISD does not believe that it can legally release the information you requested and will not be contacting the Family Privacy Compliance Office or the Office of Special Education Programs as initially stated. Mansfield ISD has complied and will continue to comply with all applicable federal and state laws. The District is committed to ensuring the safety, welfare, and civil rights of its students. If you have specific information to indicate that a student or students may have been abused or neglected, please provide that information to the District so that such allegations may be fully investigated.

Very truly yours,

Mari M. McGowan

MMM/slb

cc:    Dr. Jim Vaszauskas (*via email*)
       Dr. Kyle Heath (*via email*)

#648387

55