ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FT. WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

NOV 2 4 2014

CLERK, U.S. DISTRICT COURT
By _____
                Deputy

| | | |
|---|---|---|
| DISABILITY RIGHTS TEXAS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 14-CV-715 |
| | § | |
| MANSFIELD INDEPENDENT | § | |
| SCHOOL DISTRICT and | § | |
| DR. JIM VASZAUSKAS, | § | |
| in his Official Capacity as | § | |
| Superintendent, | § | |
| | § | |
| Defendants | § | |

## PLAINTIFF'S MEMORANDUM ON IT'S ORGANIZATIONAL STATUS

ELISE MITCHELL
State Bar No. 01478720
DISABILITY RIGHTS TEXAS
1420 West Mockingbird Lane, Ste. 450
Dallas, Texas 75247-4932
(214) 630-0916 (Phone)
(214) 630-3472 (Fax)
emitchell@disabilityrightstx.org

COLLEEN ELBE
State Bar No. 24050154
DISABILITY RIGHTS TEXAS
4747 S. Loop 289, Suite 120
Lubbock, Texas 79424
(806) 765-7794 (Phone)
(806) 765-0496 (Fax)
celbe@disabilityrightstx.org

CONSTANCE R. WANNAMAKER
State Bar No. 24029329
DISABILITY RIGHTS TEXAS
300 E. Main, Suite 205
El Paso, Texas 79901
(915) 542-0585 (Phone)
(915) 542-2676 (Fax)
cwannamaker@disabilityrightstx.org

ATTORNEYS FOR PLAINTIFF

i

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................ ii

TABLE OF AUTHORITIES ................................................................................................. iii

I. INTRODUCTION ...........................................................................................................1

II. DRTX IS THE DESIGNATED PROTECTION AND ADVOCACY SYSTEM FOR
    THE STATE OF TEXAS ..............................................................................................1

    A. Overview of the Federal Acts ....................................................................................1

    B. Texas Designation.......................................................................................................3

        1. Current Designation of Disability Rights Texas as the Texas Protection and
           Advocacy System.........................................................................................................3

        2. Prior Texas Gubernatorial Assurances.......................................................................5

        3. Designation of DRTx as a Private Nonprofit and the Requirement of
           Independence ...............................................................................................................7

III. DISABILITY RIGHTS TEXAS IS A PERSON FOR THE PURPOSES OF
     42 U.S.C. § 1983.............................................................................................................8

IV. DISABILITY RIGHTS TEXAS RAISES CLAIMS FOR DECLARATORY AND
     INJUNCTIVE RELIEF INDEPENDENT OF SECTION 1983 ..................................10

CERTIFICATE OF SERVICE ..............................................................................................14

# TABLE OF AUTHORITIES

## CASES

*Abdul-Alim Amin v. Universal Life Ins. Co. of Memphis, Tenn.*,
  706 F.2d 638 (5th Cir. 1983) ................................................................................12

*Adams v. Park Ridge*,
  293 F.2d 585 (7th Cir.1961) ................................................................................ 9

*Advocacy Inc. v. Tarrant County Hosp. Dist.*,
  2001 WL 1297688 (N.D.Tex. Oct. 11, 2001) ....................................................3

*Ala. Disabilities Advocacy Program v. Tarwater Dev. Ctr.*,
  97 F.3d 498 (11th Cir. 1996) ........................................................................1, 2, 3

*Barbara Z. v. Obradovich*,
  937 F.Supp. 710 (N.D. Ill 1996) ........................................................................9

*Cinema Art Theater Inc., v. City of Troy*,
  810 F.Supp.2d 489 (N.D. N.Y 2011) ..................................................................9

*Cook County Ill. v. U.S. ex rel. Chandler*,
  538 U.S. 119 (2003) ............................................................................................9

*Disability Rights Wisconsin, Inc., v. State of Wisconsin Dep't of Pub. Instruction*,
  463 F.3d 719 (7th Cir. 2006) ..............................................................................2

*Discovery House Inc. v. Consolidated City of Indianapolis*,
  319 F.3d 277 (7th Cir. 2003) ..............................................................................9

*Indiana Prot. & Advocacy Servs. v. Indiana Family & Soc. Servs. Admin.*,
  603 F.3d 365 (7th Cir. 2010) ..................................................................2, 11, 12

*Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*,
  677 F.2d 1045 (5th Cir.1982) ............................................................................12

*Louisville R. Co. v. Letson*,
  43 U.S. 497 (1844), ..........................................................................................9

*Mississippi Prot. & Advocacy System v. Cotten*,
  929 F.2d 1054 (5th Cir. 1991) ............................................................................3

*Monnell v. Dept. of Soc. Servs. of City of New York*,
  436 U.S. 658 (1978) ............................................................................................8

*Robbins v. Budke*,
    739 F. Supp. 1479 (D. N.M. 1990) ........................................................................1

*United States v. Chemical Foundation, Inc.*,
    272 U.S. 1 (1926) ..................................................................................................5

*Virginia Office for Protection and Advocacy v. Stewart*,
    131 S. Ct. 1632 (2011) ............................................................................ 7, 10, 11

*Watchtower Bible and Tract Soc. v. Los Angeles County*,
    181 F.2d 739 (9th Cir. 1950) ................................................................................9

**STATUTES AND REGULATIONS**

28 U.S.C. § 1331 ........................................................................................................12

28 U.S.C. § 1343 ..........................................................................................................9

28 U.S.C. § 2201 ...................................................................................................11, 12

28 U.S.C. § 2201(a) ...................................................................................................12

28 U.S.C. § 2202 ...................................................................................................11, 12

29 U.S.C. § 794e(m)(1) ...............................................................................................2

42 U.S.C. § 1983 ...................................................................................1, 8, 10, 11

42 U.S.C. § 10801 ........................................................................................................1

42 U.S.C. § 10802 ........................................................................................................2

42 U.S.C. § 10802(2) ...................................................................................................2

42 U.S.C. § 10803 ........................................................................................................2

42 U.S.C. § 10804 ....................................................................................................2, 3

42 U.S.C. § 10804(a)(1) ...............................................................................................7

42 U.S.C. § 10805 ....................................................................................................2, 5

42 U.S.C. § 10805(a) ...................................................................................................3

42 U.S C. § 10805(c)(1)(B) .....................................................................................7, 11

42 U.S.C. § 10805(c)(1)(B)(ii) ..................................................................................7

42 U.S.C. § 10822(b) ...............................................................................................3

42 U.S.C. § 15022 ....................................................................................................2

42 U.S.C. § 15041 .................................................................................................1, 2

42 U.S.C. § 15043 .............................................................................................2, 7, 11

42 U.S.C. § 15043(a) ...............................................................................................3

42 U.S.C. § 15043(a)(2)(G) .....................................................................................7

42 U.S.C. § 15044 ....................................................................................................7

42 U.S.C. § 15044(a) ...........................................................................................7, 11

45 C.F.R. § 1386.19 .................................................................................................4

45 C.F.R. § 1386.20(a) ............................................................................................ 4

45 C.F.R. § 1386.20(d) ............................................................................................3

The Developmental Disabilities Assistance and Bill of Rights, Pub. L. No. 94-103, § 203, 89 Stat. 486, 504 (1975) .............................................................................................. 1, 6

The Developmental Disabilities Assistance and Bill of Rights, Pub. L. No. 101-496 ..................... 4

The Protection and Advocacy for Individuals with Mental Illness Act, Pub. L. No. 99-319, as amended. ....................................................................................................4

**OTHER AUTHORITIES**

S. Rep. No. 109, 99th Cong., 1st Sess. 3 (1986) ......................................................................2

S. Rep. No. 113, 100th Cong., 1st Sess. 24 (1987) ..................................................................2

Tex. Atty. Gen. Op. JC-0461 (2002) .................................................................1, 3

Tex. Const. art. 4, §10 ..............................................................................................4

# I. INTRODUCTION

In its Original Complaint, Plaintiff Disability Rights Texas ("DRTx") has requested declaratory and injunctive relief against Defendants Mansfield Independent School District and Dr. Jim Vaszauskas, Superintendent, in his Official Capacity. Plaintiff further alleged that DRTx is the designated protection and advocacy agency ("P&A") for individuals with disabilities for the State of Texas. Pursuant to a request from the Court, Disability Rights Texas hereby submits its brief and supporting documentation evidencing its designation as the P&A and its status as a person with the ability to bring suit against Defendants under 42 U.S.C. § 1983.

## II. DRTX IS THE DESIGNATED PROTECTION AND ADVOCACY SYSTEM FOR THE STATE OF TEXAS

### A. Overview of the Federal Acts

"Disturbed by the inhumane and despicable conditions discovered at New York's Willowbrook State School for persons with developmental disabilities, Congress enacted the Developmental Disabilities Assistance and Bill of Rights Act ("the Act") to protect the human and civil rights of this vulnerable population." *Ala. Disabilities Advocacy Program v. Tarwater Dev. Ctr.,* 97 F.3d 492, 494 (11th Cir. 1996); *see* The Developmental Disabilities Assistance and Bill of Rights, Pub. L. No. 94-103, § 203, 89 Stat. 486, 504 (1975); S. Rep. No. 93-1297 (1974) (codified in 42 U.S.C. § 15041) ("DD Act"). Appendix, tab A., p. 3,6; tab B., p. 20, 21. The DD Act addressed what Congress generally "found to be deplorable conditions in public and private facilities housing persons with mental illness and developmental disabilities." Tex. Atty. Gen. Op. JC-0461 (2002) referencing 42 U.S.C. § 10801; *Robbins v. Budke,* 739 F. Supp. 1479, 1481 (D. N.M. 1990). Appendix, tab W., p. 133. "Congress legislated the Act to protect

disabled people who are unable to protect themselves." *Tarwater,* 97 F.3d at 498 n.3.  Appendix, tab A., p. 6.

While the initial mandate for the P&A system is contained within the DD Act, Congress subsequently expanded the responsibilities of the existing P&As to also advocate for all persons with mental illness, under the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI Act"), because they were the eligible systems "established in a State to protect and advocate the rights of persons with developmental disabilities under subtitle C of the Developmental Disabilities Assistance and Bill of Rights Act of 2000, 42 U.S.C. § 15041 *et seq.*" 42 U.S.C. § 10802(2).

Congress later authorized P&As to advocate on behalf of persons with physical and other disabilities not covered under either the DD or PAIMI Acts, pursuant to the Protection and Advocacy of Individual Rights ("PAIR") Program of the Rehabilitation Act.  29 U.S.C. § 794e(m)(1).  "The DD Act, the PAIMI Act and the PAIR Act establish separate but largely parallel regimes to serve particular populations of people with disabilities." *Disability Rights Wisconsin, Inc., v. State of Wisconsin Dep't of Pub. Instruction*, 463 F.3d 719 at 724 (7th Cir. 2006).  Appendix, tab C., p. 27.  The DD Act, the PAIMI Act and the PAIR Act are collectively referred to as "the Acts or the P&A Acts."[1]

The states are offered significant federal funding to provide services to people with developmental disabilities, see 42 U.S.C. § 15022, and any state that accepts the offer is required to set up a statewide P&A system, which is also funded by federal allotments. *See id.,* §15043, and 42 U.S.C. §§ 10802-10805; see also *Indiana Prot. & Advocacy Servs. v. Indiana Family & Soc. Servs. Admin.*, 603 F.3d 365, 367 (7th Cir. 2010)(" The Act provides funding for a state on the condition that the state designates a "protection

---

[1] The PAIMI Act was modeled after the DD Act, and it was Congress' intent that the two statutes be applied in a like manner. *See, e.g.,* S. Rep. No. 109, 99ᵗʰ Cong., 1ˢᵗ Sess. 3 (1986); S. Rep. No. 113, 100ᵗʰ Cong., 1ˢᵗ Sess. 24 (1987), reprinted in 1987 U.S.C.A.A.N. 781, 803-04.  Accordingly, courts' reasonings apply with equal force to both Acts.  *Advocacy Program v. Tarwater Developmental Ctr.*, 894 F. Supp. 424, 428 (M.D. Ala. 1995), *aff'd,* 97 F.3d 494, 494 (11th Cir. 1996).

and advocacy system" to accomplish these goals"). Appendix, tab H., p. 41; tab M., p. 88, 92, 93. Congress has not made compliance with the P&A Acts mandatory; rather, a state seeking to escape the statute's obligations can simply forego federal funding. Indeed, the P&A Acts recognize this voluntary nature of the funding by specifically providing for reallocation of the federal funds to other states should a state choose not to accept funds allotted to it. 42 U.S.C. § 10822(b). However, once a state designates a protection and advocacy system, it must also provide assurances that the P&A system will have the authority to obtain records and investigate incidents of abuse and neglect, among other things, as specified under 42 U.S.C. §§ 15043(a) and 10804. *See e.g.*, *Mississippi Prot. & Advocacy System v. Cotten*, 929 F.2d 1054, 1055 (5th Cir. 1991); *Ala. Disabilities Advocacy Program,* 97 F.3d at 494. Appendix tab H., p. 41; tab G., p. 39; tab A., p. 3. Additionally, once designated, a P&A system cannot be de-designated or re-designated absent a finding of good cause and public notice. *See* 45 C.F.R. § 1386.20(d), 42 U.S.C. § 10805 (a). Appendix, tab E., p. 33; tab I., p. 46.

As the Texas Attorney General and a Fort Worth Federal District Court has found, Texas has accepted these conditions by designating DRTx, formerly Advocacy, Incorporated,[2] as the federally mandated P&A system in Texas. *See* Tex. Att'y Gen. Op. No. JC-0461 (2002); *Advocacy Inc. v. Tarrant County Hosp. Dist.,* 2001 WL 1297688, at *3 (N.D.Tex. Oct. 11, 2001). Appendix, tab W., p. 134.

**B.      Texas' Designation**

**1.      Current Designation of Disability Rights Texas as the Texas Protection and Advocacy System**

---

[2] In 2011, Advocacy, Incorporated changed its name to Disability Rights Texas. The Resolution of the Board of Directors of Advocacy, Incorporated in 2011 stated, "that the Articles of Incorporation for the Company be amended to change the Company's name to "Disability Rights Texas" in accordance with the Certificate of Amendment." Appendix, tab AA, p. 152. A letter from the Office of the Secretary of State confirms that a Certificate of Amendment "has been found to conform to the applicable provisions of law" and Advocacy, Incorporated was officially renamed Disability Rights Texas. Appendix, tab X., p. 146 and 147. As of 2011, Advocacy, Incorporated has been known as Disability Rights Texas. Appendix, tab Y., p. 150; tab Z., p. 151.

In 1984, the implementing regulations of the DD Act mandated that "the Governor or other State official, who is empowered by the Governor or State legislature…" designate the protection and advocacy system in each state. 45 C.F.R. § 1386.19 and 45 C.F.R. § 1386.20(a). Appendix, tab F., p. 37; tab E., p. 33 and 34. In the State of Texas, the Governor "shall cause the laws to be faithfully executed and shall conduct, in person, or in such a manner as shall be prescribed by law, all intercourse and business of the State with other States and with the United States." Tex. Const. art. 4, §10. Appendix, tab D., p. 32. Therefore, through the federal definition of the Designating Official under 45 C.F.R. §§ 1386.19 and 1386.20 and as empowered by the Texas Constitution as the chief executive officer of the state, the Governor of the State of Texas was charged with the responsibility of designating "the State official or public or private agency to be accountable for proper use of funds and conduct of the Protection and Advocacy agency." 45 C.F.R. § 1386.20(a). Appendix, tab E., p. 33 and 34.

In accordance with the DD regulations and the Texas Constitution, the current designation of DRTx as the protection and advocacy system in Texas was made by Governor Ann W. Richards in 1991. Governor Richards provided assurances to the U.S. Department and Health and Human Services through the Administration on Developmental Disabilities to "ensure the continuation of the Texas Developmental Disabilities Protection and Advocacy System." Appendix, tab V., p. 122. Governor Richards confirmed that "[DRTx] continues to be the grantee for these funds in Texas." *Id*. The Governor further assured that DRTx "is the office designated…to carry out activities under Part C of the Developmental Disabilities Assistance and Bill of Rights Act, as amended, Public Law 101-496, and The Protection and Advocacy for Individuals with Mental Illness Act, Public Law 99-319, as amended. Appendix, tab V., p. 127.

The federal government is entitled to rely on the presumption that the Governor of Texas, who designated the State's P&A system to receive federal funds, was authorized to do so pursuant to state law.[3] *Cf United States v. Chemical Foundation, Inc.* 272 U.S. 1, 14-15 (1926)("the presumption of regularity supports official acts of public officials, and, in the absence of clear evidence to the contrary, courts should presume that they have properly discharged their official duties). The procedures followed by the Governor of Texas were consistent with the federal regulations and state law, and, therefore, DRTx's designation as the P&A for Texas pursuant to the PADD and PAIMI Acts was legitimate.[4]

## 2. Prior Texas Gubernatorial Assurances

Not only is DRTx the current designated protection and advocacy system in Texas, it has always been the designated protection and advocacy system in Texas. DRTx was first designated back in May 20, 1976, by Governor Dolph Briscoe, who issued an executive order designating the State Bar of Texas as "the responsible agency for planning an appropriate advocacy system pursuant to this executive order and appropriate state and federal law for persons with developmental disabilities." Tex. Gov. Exec. Order No. DB-29 (1976). Appendix, tab O., p. 110. This executive order was issued under the authority vested to the Governor of the State of Texas through the "Constitution and laws of the State of Texas." *Id.* The order specifically directed that "the administration of such an advocacy system…be independent of any state agency which provides treatment, services or habilitation to persons with developmental disabilities." *Id.*

---

[3] Even assuming, *arguendo*, that the Governor lacked authority under Texas state law to designate the P&A system, it merely means that there may be an issue for Texas's legislature to consider or, if necessary, for Texas's courts to adjudicate in the context of a lawsuit filed by a plaintiff with standing to challenge the Governor's action.

[4] Notably, neither the Governor of Texas nor the State's legislature has voiced any objection to the conditions set forth in the PAIMI Act, or sought to revoke plaintiff's designation or limit plaintiff's statutorily authorized responsibilities.

Both the State Bar of Texas and DRTx agreed to comply with applicable federal statutes when "obtaining any Federal grants, loans, contracts, property, discounts or other Federal financial assistance." Appendix, tab R., p. 113 and 114. This agreement, entitled "Assurance of Compliance with the Department of Health, Education and Welfare Regulation Under Title VI of the Civil Rights Act of 1964," was executed on May 23, 1977. Appendix, tab S., p. 117. On August 16, 1977, Governor Briscoe endorsed the "Plan for the Protection of the Rights of and Advocacy for Persons With Developmental Disabilities" as prepared by the State Bar of Texas on the same day. Appendix, tab S., p. 116.

Then, on September 14, 1977, the State Bar of Texas and DRTx entered into an agreement authorizing DRTx "to implement the Advocacy and Protective Services System according to the Plan prepared pursuant to federal rules and regulations, as approved by Governor Briscoe and the Department of Health, Education, and Welfare." Appendix, tab R., p. 113. The agreement specified that the "Board of Directors of the Corporation will be responsible for the administration of the system and for developing the operating guidelines and policies to be put into operation by the staff of the Corporation." Id. Also on September 14, 1977, Governor Briscoe issued an accompanying executive order to certify that the State Bar of Texas "completed the plan for an advocacy system" and "may contract with [DRTx], or any other responsible entity, for receipt of funding and performance of services if the State Bar of Texas deems it advisable and to the best interest of those persons entitled to services." Appendix, tab P., p. 111; tab Q., p. 112.

On September 14, 1983, Governor Mark White re-designated "the State Bar of Texas as the state entity for implementing the Advocacy and Protective Services System for the Developmentally Disabled." He further stated that "[p]ursuant to the provisions of Section 113 of P.L. 94-103, the State Bar of Texas may contract with [DRTx]...for receipt of funding and performance of services if the State Bar deems it advisable and to the best interest of those persons entitled to services." Appendix, tab U., p. 121.

### 1. Designation of DRTx as a Private Nonprofit and the Requirement of Independence

Once Texas chose to participate in the federal spending programs described above, it had the option to designate either a state agency *or* a private nonprofit entity to serve as its P&A. *See* 42 U.S.C. §§ 10804(a)(1)(emphasis added); 15044(a); *Virginia Office for Prot. and Advocacy v. Stewart*, 131 S.Ct. 1632, 1636 (2011)("A participating State is free to appoint either a state agency or a private nonprofit entity as its P & A system."). Appendix, tab G., p. 39; tab L., p. 74. Regardless of whether Texas elected to designate a state agency or a private non-profit, Congress required "[t]he designated entity [] have certain structural features that ensure its independence from the State's government." *Virginia Office for Prot. and Advocacy*, 131 S. Ct. at 1636. Appendix, tab L., p. 74. These features include assurances from the States that such an agency shall "be independent of any agency that provides treatment, services, or habilitation to individuals with developmental disabilities." 42 U.S.C. § 15043(a)(2)(G); 42 U.S.C. § 10804(a)(1). Appendix, tab H., p. 42; tab G., p. 39. Congress also mandated additional requirements for P&As "organized as a private non-profit entity with a multi-member governing board..." 42 U.S.C. § 10805(c)(1)(B). Appendix, tab I., p. 48. Those include requirements that the governing board contain "members who broadly represent or are knowledgeable about the needs of the clients served by the system including the chairperson of the advisory council of such system." 42 U.S.C. § 10805(c)(1)(B)(ii), *see also* 42 U.S.C. § 15044. Appendix, tab I., p. 48 and 49.

Texas has complied with ensuring independence while designating DRTx as a private, nonprofit agency to serve as the protection and advocacy System for the state. Governor Briscoe specifically chose DRTx, a "non-profit corporation incorporated and operated for, among other purposes, advocating for and protecting the human and legal rights of the developmentally disabled citizen of Texas." Appendix, tab R., p. 113; tab S., p. 117. DRTx was formed as a non-profit organization with a governing board and

received a 501(c)(3) non-profit designation from the United States Internal Revenue Service. This status has continued to this day. Appendix, tab X., p. 146 and 147; tab Y., p. 150; tab Z., p. 151.

## III.  DISABILITY RIGHTS TEXAS IS A PERSON FOR THE PURPOSES OF 42 U.S.C. § 1983

Defendants MISD and Dr. Jim Vaszauskas' allegation that DRTx is an agent of the State and for that reason cannot be a citizen capable of bringing suit under 42 U.S.C. § 1983 is wrong. As explained above, and as evidenced by documentation in the attached appendix at T,X,Y,Z, and AA (IRS and Secretary of State filings), DRTx was designated as a private non-profit entity, and not a state agency. Appendix, tab T., p. 120; tab X., p. 146 and 147; tab Y., p. 150; tab Z., p. 151. Thus, it is clear that DRTx is not an agent of the State of Texas, as alleged by Defendants, but rather an independently operating private not-for-profit corporation. As a private not for profit corporation, DRTx is a "person" with the ability to bring suit under 42 U.S.C § 1983. Section 1983 specifically states that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, **any citizen of the United States or other person** within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983(emphasis added).

It is well established law that a corporation is considered to be a *person* with the ability to bring suit under section 1983 for violations of its rights under color of law. The United States Supreme Court, in *Monell v. Dept. of Soc. Servs. of City of New York*, had occasion to closely examine the history and purpose of § 1 of the Civil Rights Act of 1871, the predecessor to section 1983 to determine, *inter alia*, what constitutes a person under section 1983. In doing so, the Court reviewed both the history of the law, and Congressional debates, and concluded that "Members of Congress understood 'persons' to include municipal corporations." 436 U.S. 658, 686 (1978). Indeed, the Court found that "by 1871, it was well

understood that corporations should be treated as natural persons for virtually all purposes of constitutional and statutory analysis." *Id.*, at 687. "[A] corporation created by and doing business in a particular state, is to be deemed to all intents and purposes as a person, although an artificial person, . . . capable of being treated as a citizen of that state, as much as a natural person." *Id.* at 687-88, *quoting Louisville R. Co. v. Letson*, 43 U.S. 497 (1844) (emphasis in original).

The United States Supreme Court more recently visited the question of whether a corporation is a person for the purposes of the Federal Claims Act in *Cook County Ill. v. U.S. ex rel. Chandler*, 538 U.S. 119 (2003). Once again, the Court again reviewed historical statutory provisions and law and determined that by the mid 1800s, "a corporation was understood to have citizenship independent of its constituent members by virtue of its status as 'a person, although an artificial person.'" *Id.*, at 126, *quoting Louisville R. Co. v. Letson*, 43 U.S. 497 (1844); and A. Burrill, A Law Dictionary and Glossary 383 (2d ed. 1859) ("A corporation has been declared to be not only a person, (3)27 but to be capable of being considered an inhabitant of a state, and even of being treated as a citizen, for all purposes of suing and being sued"). Accordingly, it is clear that a corporation is considered a "person" both in the context of section 1983 as well as for all legal purposes.[5]

Defendants' reliance on *Barbara Z. v. Obradovich*, 937 F.Supp. 710 (N.D. Ill 1996), in support of its proposition that DRTx is not a citizen or person for purposes of 42 U.S.C. § 1983, is clearly distinguishable from the case at bar. In *Barbara Z.* a school district brought a cross-claim against the Illinois State Board of Education and a third-party complaint against the Illinois Department of Mental Health and

---

[5] *See also, Watchtower Bible and Tract Soc. v. Los Angeles County*, 181 F.2d 739 (9th Cir. 1950)(holding that corporation entitled to invoke jurisdiction of the federal courts via Civil Rights Acts and 28 U.S.C. § 1343); *Discovery House Inc. v. Consol. City of Indianapolis*, 319 F.3d 277 (7th Cir. 2003) citing *Adams v. Park Ridge*, 293 F.2d 585 (7th Cir.1961)("A corporation can bring a suit on its own behalf under § 1983 for its own damages."); *Cinema Art Theater Inc., v. City of Troy*, 810 F.Supp.2d 489 (N.D. N.Y 2011)(holding that theater's corporation status made it a "person" under the law and did not prevent it from bringing suit under section 1983).

Developmental Disabilities seeking damages and injunctive relief under § 1983. The district court held that the School District was undoubtedly a state or one of its political subdivisions and thus not an "other person" that can sue within the meaning of section 1983. *Id.* At 722. There was also no discussion that the school district had structural features that ensured its independence from the State's government, one of the deciding factors in *Virginia Office for Prot. and Advocacy,* 131 S. Ct. at 1636. Appendix, tab L., p. 74.

In this case however, it is clear that DRTx is not an agent of the State of Texas, nor a political subdivision of the state. Rather, it is a private, non-profit organization duly registered with the Secretary of State of Texas and the Internal Revenue Service. Appendix, tab X., p. 146 and 147; tab Y., p. 150; tab Z., p. 151. It is therefore an "other person" within the meaning of § 1983. Nonetheless, even if it was designated as a state agency, which it is not, it would still have authority to seek declaratory and injunctive relief against Defendants due to its structural features that ensure its independence from the State's government. *See Virginia Office for Prot. and Advocacy,* 131 S. Ct. at 1641-42. Appendix, tab L., p. 76 and 77.

Consequently, as a non-profit corporation, DRTx is a person within the meaning of section 1983 with the authority to bring a cause of action to redress violations of its rights under that law. Therefore, Defendants' challenge to DRTx's ability to bring suit under section 1983 should be overruled and Defendants' motion to dismiss should be denied.

## IV.  DISABILITY RIGHTS TEXAS RAISES CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF INDEPENDANT OF SECTION 1983

Even had DRTx been designated as a state agency, which it was not, DRTx would still have the authority to bring suit against Defendants. The question of whether a P&A operating as an independent state agency can sue a state agency for declaratory and injunctive relief was considered by the Seventh

Circuit Court of Appeals in *Indiana Protection and Advocacy Services v. Indiana Family and Social Services Admin.*, 603 F.3d 365 (7th Cir. 2010). Appendix, tab M., p. 86-107. In *IPAS*, the Court examined whether the P&A, which had been designated as a state agency, could bring suit against a state agency and state officials for the release of records of patients with mental illness. The Court, in deciding in favor of the Indiana P&A, found that IPAS could bring an action for declaratory and injunctive relief against a state agency. *Id.* at 375. Appendix, tab M., p. 94.

A year later, the United States Supreme Court decided *Virginia Office for Protection and Advocacy v. Stewart*. Appendix, tab L., p. 70-85. In *VOPA*, the Virginia P&A, at that time a state agency, filed a complaint in federal court seeking declaratory and injunctive relief against state officials for the production of records of individuals with mental illness in state run institutions. The Supreme Court found, under the circumstances where Virginia created VOPA and gave it the power to sue state officials in return for federal funds, "the Eleventh Amendment presents no obstacle to VOPA's ability to invoke federal jurisdiction on the same terms as any other litigant." *Virginia Office for Protection and Advocacy,* 131 S. Ct. at 1642. Appendix, tab L., p. 77. The Court relied on the fact that Virginia was

> …free to appoint either a state agency or a private nonprofit entity as its P & A system. § 15044(a); § 10805(c)(1)(B). But in either case, the designated entity must have certain structural features that ensure its independence from the State's government…and restricts the State's ability to impose hiring freezes or other measures that would impair the system's ability to carry out its mission, § 15043(a)(2)(K).

*Id.* at 1636. Appendix, tab L., p. 74.

Even if this Court finds that DRTx is not a person for the purposes of a suit under 42 U.S.C. § 1983, Plaintiff's Complaint should not be dismissed because Plaintiff, like those in VOPA and IPAS, raises claims for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202. DRTx can raise these claims despite "[t]he existence of another adequate remedy," Fed. R. Civ. Pro. 57, and may "request relief in the alternative or different types of relief." Fed. R. Civ. Pro. 8(a)(3).

Plaintiff requests both injunctive and declaratory relief throughout its Original Complaint, in ¶ 5, Section VI., ¶ 31, and Section VII, ¶ 32, and as the ultimate relief requested in Section VIII, A. and B. *See* Plaintiff's Original Complaint for Declaratory and Injunctive Relief, Appendix, tab BB., p. 159 and 164. Plaintiff also alleged federal question jurisdiction in this Court under 28 U.S.C. § 1331, in Section II, ¶ 4. Appendix, tab BB., p. 158. Indeed, Plaintiff filed a Motion for Declaratory and Injunctive relief simultaneously with its Original Complaint seeking relief under 28 U.S.C. §§ 2201 and 2202. See Docket Entry No. 2.

Section 2201 permits a court to "declare the rights and other legal relations of **any interested party** seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a)(emphasis added). Section 2202 permits a court to award further relief based on any declaratory judgment "against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202. Neither statute requires a party plead citizenship to bring an action for declaratory or injunctive relief; the only requirement is the existence of "an interested party." Moreover, in addition to the statutory language of 28 U.S.C. §§ 2201 and 2202, the PAIMI Act itself confers a legally enforceable right of P&A access to patient records, and authorizes a P&A "to bring [a] suit for declaratory and injunctive relief" to enforce that right. *Indiana Prot. and Advocacy Servs.*, 603 F.3d at 375. Appendix, tab M., p. 94.

Plaintiff has pled sufficient factual allegations and statements of its causes of action to put Defendants on notice of the declaratory and injunctive relief sought. At the motion to dismiss stage, the court "must accept as true all well pleaded facts in the complaint, and the complaint is to be liberally construed in favor of the plaintiff." *Abdul-Alim Amin v. Universal Life Ins. Co. of Memphis, Tenn.*, 706 F.2d 638, 640 (5th Cir. 1983) *citing Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982). As such, Plaintiff's Complaint should not be dismissed for failure to state a claim for relief and Defendant MISD's motion to dismiss should be, in all respects, denied.

---

Respectfully submitted,

ELISE MITCHELL
State Bar No. 01478720
DISABILITY RIGHTS TEXAS
1420 West Mockingbird Lane, Ste. 450
Dallas, Texas 75247-4932
(214) 630-0916 (Phone)
(214) 630-3472 (Fax)
emitchell@disabilityrightstx.org

COLLEEN ELBE
State Bar No. 24050154
DISABILITY RIGHTS TEXAS
4747 S. Loop 289, Suite 120
Lubbock, Texas 79424
(806) 765-7794 (phone)
(806) 765-0496(fax)
celbe@disabilityrightstx.org

CONSTANCE WANNAMAKER
State Bar No. 24029329
DISABILITY RIGHTS TEXAS
300 E. Main, Suite 205
El Paso, Texas 79901
(915) 542-0585 (Phone)
(915) 542-2676 (fax)
cwannamaker@drtx.org

## CERTIFICATE OF SERVICE

I hereby certify that on November 24, 2014, a true and correct copy of the foregoing document, in electronic form, was sent to the person listed below in accordance with the Local Rules for the U.S. District Court for the Northern District of Texas.

Richard M. Abernathy
Charles J. Crawford
Ross Wells
Abernathy, Roeder, Boyd & Joplin, P. C.,
1700 Redbud Boulevard, Ste. 300
P.O Box 1210
McKinney, Texas 75070-1210
(214) 544-4040 (fax)


ELISE MITCHELL